Major **COOK** and James Harold Jackson, Appellants,

v.

**UNITED STATES** of America, Appellee.

No. 20425.

United States Court of Appeals Ninth Circuit.

June 10, 1966.

Rehearing Denied Aug. 26, 1966.

See 365 F.2d 565.

Luke McKissack, Los Angeles, Cal., for appellants.

Manuel L. Real, U. S. Atty., John K. Van De Kamp, Asst. U. S. Atty., Chief, Criminal Division, J. Brin Schulman, Asst. U. S. Atty., Asst. Chief, Criminal Division, Jules D. Barnett, Asst. U. S. Atty., Los Angeles, Cal., for appellee.

Before POPE, BARNES and ELY, Circuit Judges.

POPE, Circuit Judge.

The appellants were charged in the court below under an indictment alleging that they had entered into a conspiracy and conspired to violate §§ 173 and 174 of Title 21 U.S.C., which conspiracy was to receive and conceal certain amounts of narcotic drugs after the said drugs had been imported and brought into the United States, knowing the same had been imported and brought into the United States contrary to law. After trial a verdict of guilty was returned by the jury as to each defendant. After sentence of imprisonment was imposed upon each of them they appealed to this court.

The only specifications of error which we need note here are that the court improperly advised the jury that they might find the narcotic drugs in question were illegally imported into the United States to the knowledge of the defendants and that there was no proof of the character of the alleged contraband.

Section 174 of Title 21 U.S.C., under which this indictment was found, provides as follows: "Whenever on trial for a violation of this section the defendant is shown to have or to have had possession of the narcotic drug, such possession shall be deemed sufficient evidence to authorize conviction unless the defendant explains the possession to the satisfaction of the jury." The Government relies solely upon this presumption for the purpose of proving a known importation of the drugs. Appellants assert that the quoted language was inapplicable in this case for the reason that there was not adequate proof of their possession of the narcotic drug.

If we assume that such possession was shown we are nevertheless confronted with a further difficulty in upholding the conviction in this case in that there was a failure on the part of the United States to prove that the "38 spoons" of

alleged cocaine and the "three ounces" and other portions of white powder offered in evidence were in fact narcotic drugs.[1]

There was no qualified witness called to establish or testify that any of these powders were in fact narcotic drugs. There was evidence to show that these appellants handled and dealt with these powders with the secrecy and deviousness with which it would be expected to use in handling contraband narcotic drugs. High prices were bid for them. In dealing among themselves the parties who possessed and handled these powders referred to them as narcotic drugs.

If our problem here was solely whether or not there was proof of conspiracy to buy or sell narcotic drugs and to conceal the same, it is conceivable that the conspiracy could be established even if the white powder in question were powdered sugar or flour or some other innocuous substance, and even if the attempted seller was defrauding the would be buyer by selling him something purporting to be a narcotic drug when it was not. But the problem here has to do with whether the evidence was sufficient to give rise to the presumption referred to in the portion of the statute quoted above.

It is our view, and we hold, that before that presumption can come into play there must be proof that the possessed drugs were in fact narcotic drugs. We note judicially that whether or not a powder or substance is a narcotic cannot be determined by a mere inspection of its outward appearance. In this case, for reasons unknown to us, the Government made no attempt to prove the narcotic character of the drugs and did not succeed in doing so.

Accordingly, the judgment must be reversed and the cause is remanded for a new trial to the court below.

1. Offered and received in evidence were 10.445 grams of white granular powder substance; 55.200 grams of white powder contained in rubber condom and in glass jars; 48.050 grams of white powder contained in rubber condom in glass jar; and 14.595 grams of white powder contained in rubber condom and glass jar.