[Crim. No. 11185.    Second Dist., Div. One.    Oct. 26, 1966.]

THE PEOPLE, Plaintiff and Appellant, v. ALFRED McCHRISTIAN, Defendant and Respondent.

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, Evelle J. Younger, District Attorney, Harry Wood and Harry B. Sondheim, Deputy District Attorneys, for Plaintiff and Appellant.

Erling J. Hovden, Public Defender, and James L. McCormick, Deputy Public Defender, for Defendant and Respondent.

WOOD, P. J.—Defendant was accused in two counts of violating section 11500 of the Health and Safety Code in that, on April 2 and 3, 1965, he unlawfully had heroin in his possession. His motion, under section 995 of the Penal Code, to dismiss the information was granted and the case was dismissed. The People appeal from the order of dismissal.

Section 995 of the Penal Code provides, in part, that an information must be set aside if the defendant has "not been legally committed by a magistrate," or if the defendant has "been committed without reasonable or probable cause."

The transcript of the preliminary examination shows, in substance, as follows:

On April 2, 1965, about 3:30 p.m., while Officers Burke and Northrup were near 51st Street and Avalon Boulevard in Los Angeles, Officer Burke, who was acquainted with the defendant, saw him in front of a liquor store. This officer had had information for several months from officers and informants regarding defendant's activity with narcotics. He (officer) refused to name any of the informants, but stated that those sources of information had led to arrests of suspects who were held to answer. The officer said something to the defendant, who made a reply, but the officer could not understand him. In the opinion of the officer, the defendant had something in his mouth that was blocking his voice. Then, the officer grabbed the defendant by the throat in order to prevent him from swallowing, and said "Spit it out and open your mouth." Defendant opened his mouth, and the officer saw six to nine multicolored balloons therein. They wrestled approximately two minutes, until the defendant broke the officer's grip on defendant's throat and ran away. No balloon was taken from the defendant's mouth, and no heroin was found on him. The officer testified that in his opinion the defendant had numerous balloons full of heroin in his mouth at the time of the wrestling.

Three balloons which had been specially prepared by Officer Caskey (an arresting officer on the other count, later discussed) were marked as exhibit 1—these balloons allegedly were similar to the balloons referred to in both counts.

Officer Burke testified further that the balloons in exhibit 1 were similar in size and form to the balloons he saw in defendant's mouth; that on hundreds of prior occasions he (officer) had seen and recovered similar balloons, and on most of those occasions he had found that the balloons contained a powdery substance which, as a rule after chemical analysis, was reported to be heroin, and that in his experience as a police officer he had observed that persons suspected of possessing heroin place the heroin in their mouths as a common method of disposing of the heroin. It was stipulated that Officer Burke was an expert in the field of narcotics.

On April 3, 1965, about 1:50 p.m. Officers Caskey and

Northrup went to 2310 South Mansfield Street in Los Angeles to find or see the defendant. When they approached the front of the house, the front door was open and the defendant, who was standing inside the house and about 10 or 15 feet from the officers, looked toward them and then ran part of the way up the stairway, which stairway was directly in front of the doorway. Officer Caskey exhibited his badge and identified himself. Then the officers attempted to enter the house, but they were prevented from entering by six or seven persons who barred the entrance. While the officers were attempting to enter the house, Officer Caskey saw the defendant, who was standing about halfway up the stairway, put his right hand in his pocket and withdraw about six small balloon-wrapped packages or bags. Then the defendant ran up the stairway and out of view of the officers—he was running toward a room that was later ascertained to be a bathroom. About 10 minutes later, the defendant came downstairs and sat in the living room while the officers were fighting with the several other persons in the house. Eight uniformed policemen came there and assisted Officers Caskey and Northrup in the fighting. About a half hour after Officers Caskey and Northrup arrived there, they gained entrance to the living room and arrested the defendant. Defendant was searched and no narcotic was found. No narcotic was found in the house. Officer Caskey testified that, based upon his observation of the balloons which he saw in defendant's hand, he prepared the three balloons (exhibit 1) at the police station; that the three balloons which he prepared are similar in size and appearance to the balloons he saw in defendant's hand while defendant was on the stairway. He testified further than on hundreds of prior occasions he had seen and recovered balloons similar to the balloons in exhibit 1, and on those occasions he had found in the balloons a substance which, after chemical analysis, was reported to be heroin; and that in his opinion, based upon his experience as a police officer, the balloons which the defendant had in his hand while he was on the stairway, contained heroin. It was stipulated that Officer Caskey was an expert in the field of narcotics. Prior to the time the officers went to the Mansfield address, Officer Caskey had received information that defendant was at that address and he had several spoons of heroin in his possession. The officer testified that he had received information from that source seven or eight times previously, that he had made arrests upon such information, and that five

of the arrested persons had been held to answer. The officer refused to state the name of that informant.

There was no search warrant or warrant of arrest with respect to either count.

Officer Caskey testified further that when the arrest was made at the Mansfield address, the officers advised the defendant of his constitutional rights—they told him that he did not have to say anything, that if he said anything it could be used against him, and that he was entitled to an attorney. In a conversation with the defendant at that address, the defendant said: "I didn't get rid of anything. I didn't have anything except a needle. I had a needle and I got rid of it. I didn't have any stuff." At that time, the defendant also said that he had had some balloons in his mouth the day previously when he was stopped on Avalon Boulevard, but he could not swallow them, and he got away and ran down the boulevard, and locked himself in the restroom of a gas station about 20 minutes. At the police station, the defendant said that he was not using much stuff—he was just chipping. Officer Caskey testified further that he thought that the defendant said that he had a "fix" the night before.

It was stipulated that Deputy Sheriff Elliott was an expert in the field of narcotics. He testified that on many occasions he had seen balloons similar to the balloons referred to as Exhibit 1; that on those occasions he had recovered balloons in which there was a powdery substance or residue; that, according to chemical examinations, the substance or residue in all those recoveries, was heroin, except as to one recovery wherein the substance was codeine; that in his experience as a police officer he had observed that persons suspected of possessing heroin place the heroin in their mouths as a common method of transporting heroin.

It was stipulated that Officer Berman, who was not connected with this case as an investigator, was a narcotics expert, and that his testimony would be the same as the testimony of Deputy Sheriff Elliott.

As above stated, the People appeal from an order dismissing the information under the provisions of section 995 of the Penal Code, which section provides in part that an information must be set aside if the defendant has been committed without probable cause.

The principal question on appeal is whether the transcript of the preliminary examination shows there was competent testimony that the defendant was in possession of heroin. As

above stated, no heroin or any substance purporting to be heroin was taken from defendant or offered or received in evidence. There was testimony by Officer Burke that on April 2, 1965, he saw "six to nine" multicolored balloons in defendant's mouth, while the officer and the defendant were on a street near 51st Street and Avalon Boulevard. Also, there was testimony by Officer Caskey that on April 3, 1965, while he was outside the open front-door of a house on Mansfield Street and while several persons therein were preventing him from entering the house, he saw the defendant, who was in the house and about halfway up a stairway—more than 15 feet from the officer, put his hand in his pocket and remove therefrom about six balloon-wrapped packages and then run upstairs. Officer Burke, an expert in the field of narcotics, testified that in his opinion the balloons which he saw in defendant's mouth (while defendant was on the street) contained heroin. Officer Caskey, also such an expert, testified that in his opinion the balloon-wrapped packages which he saw in defendant's hand (while defendant was on the stairway) contained heroin.

The opinion testimony of these two officers as to the contents of the balloons was based upon their general experience in the enforcement of narcotic laws, and upon their observation of the devious conduct of defendant on the particular occasions when balloons were observed in his mouth and hand. The experience of each of the officers (Burke and Caskey) was that on *most* of the hundreds of prior occasions, when he had recovered balloons similar in appearance to the "specimen" balloons, the substance in the recovered balloons was found, upon chemical analysis, to be heroin. It thus appears that the experiences of the officers would not justify a conclusion that balloons, appearing to be similar to the specimen balloons, always contain heroin,—as above stated, their experience was that *most* of the recovered balloons contained heroin. Defendant's devious or furtive conduct, upon which the officers partly based their opinions that the balloons contained heroin, consisted of defendant's acts (on the first occasion—on the street) of trying to conceal the balloons in his mouth, resisting the officer's efforts to recover the balloons, and then running away; and consisted of defendant's acts (on the second occasion—when the officers were at the front door) of taking several balloons from his pocket while he was halfway up the stairway, and then running to the top of the stairway and disappearing from the officers' view. Such conduct on the part

of defendant would not justify a conclusion that the balloons contained heroin. In this connection it is to be noted that in 1959 the Legislature enacted section 11503 of the Health and Safety Code, making it a crime to deliver substances falsely represented to be narcotics. In view of such legislation, questions arise as to whether such devious conduct of defendant, involving flight, was caused by reason of consciousness of guilt of possessing heroin or of possessing a substance purporting to be heroin. Such legislation indicates that it was generally recognized that there was a probability of error, on the part of narcotic enforcement officers and others, in relying upon mere observation as a means of deciding whether a package contained narcotics.

In *People* v. *Leal*, 64 Cal.2d 504 [50 Cal.Rptr. 777, 413 P.2d 665], there is a review of many cases regarding the requirement of proof by the prosecution that the accused possessed narcotics. Although that case related particularly to the question whether the possession of a minute crystalline residue of narcotic, useless for sale or consumption, constituted sufficient evidence to sustain a conviction of possession of a narcotic, it was implicit therein that the burden was on the prosecution to prove that the substance involved was a narcotic.

In *Major Cook* v. *United States* (decided June 10, 1966) 362 F.2d 548, 549, wherein the appellants' conviction of conspiracy to receive and conceal narcotic drugs was reversed, the United States Court of Appeals said: "If we assume that such possession was shown we are nevertheless confronted with a further difficulty . . . in that there was a failure on the part of the United States to prove that the '38 spoons' of alleged cocaine . . . and other portions of white powder offered in evidence were in fact narcotic drugs. There was no qualified witness called to establish or testify that any of these powders were in fact narcotic drugs. There was evidence to show that these appellants handled and dealt with these powders with the secrecy and deviousness with which it would be expected to use in handling contraband narcotic drugs. High prices were bid for them. In dealing among themselves the parties who possessed and handled these powders referred to them as narcotic drugs.

" . . . . . . . . . . . .

"It is our view, and we hold, that before that presumption can come into play there must be proof that the possessed drugs were in fact narcotic drugs. We note judicially that

whether or not a powder or substance is a narcotic cannot be determined by a mere inspection of its outward appearance. In this case, for reasons unknown to us, the Government made no attempt to prove the narcotic character of the drugs and did not succeed in doing so."

In the present case, as above stated, the "specimen" balloons which were received in evidence were prepared or made by an officer for the purpose of illustrating the general appearance of the balloons which were in defendant's mouth and hand—no balloon or other substance was recovered from the defendant. A general description of the three specimen balloons is that each one was about the size of an ordinary marble (about ½ inch in diameter), and the outside or covering was a piece of ordinary toy rubber balloon.

The opinion testimony of the officers, based upon their observation of the outward appearance of the balloons, was speculative and conjectural, and was not competent evidence that the balloons in the possession of defendant contained heroin. There was not adequate proof of the corpus delicti of the offense charged.

The order is affirmed.

Lillie, J., concurred.

Fourt, J., dissented.

A petition for a rehearing was denied November 23, 1966, and appellant's petition for a hearing by the Supreme Court was denied December 21, 1966. McComb, J., Mosk, J., and Sullivan, J., were of the opinion that the petition should be granted.