[No. F011363. Fifth Dist. May 18, 1990.]

THE PEOPLE, Plaintiff and Respondent, v.
MARVIN LEE ADAMS, Defendant and Appellant.

**COUNSEL**

Marilyn Drath, under appointment by the Court of Appeal, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Richard B. Iglehart, Chief Assistant Attorney General, Arnold O. Overoye, Assistant Attorney General, Michael J. Weinberger, Thomas Y. Shigemoto and James T. McNally, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

## BEST, Acting P. J.—

### STATEMENT OF THE CASE

By amended information, defendant was charged with one count of "possession for purpose of sale [of] a controlled substance, to wit: rock cocaine, in violation of Section 11351.5 of the Health and Safety Code, . . ."[1] It was further alleged that defendant had suffered two prior convictions pursuant to section 11370.2 and had served two prior prison terms pursuant to Penal Code section 667.5, subdivision (b).

George Van Meter was appointed as defendant's counsel on September 6, 1988, at which time defendant was arraigned on the original information and he pleaded not guilty and denied the allegations.

Defendant's motion, made on October 7, 1988, to have Mr. Van Meter relieved as counsel was denied.

On October 17, 1988, defendant appeared with Mr. Van Meter for trial and again asked that Mr. Van Meter be relieved as counsel. The motion was again denied. At this point defendant moved to represent himself and requested a continuance as part of that motion. Both requests were denied and the trial was trailed to October 19.

Defendant's renewed motion to proceed in propria persona on October 19 was also denied. Defendant's motion to bifurcate the trial of the offense from the priors was granted. Jury trial was had and defendant was convicted as charged in the amended information. Upon defendant's request, the priors were tried by the court and were found true as alleged.

Probation was denied and defendant was sentenced to the upper term of five years on the underlying charge with enhancements totaling eight years, for a total term of thirteen years in prison.

### STATEMENT OF FACTS

Officer Clerico was in uniform and in a marked patrol unit on the night of August 3, 1988, when he stopped defendant on the street based on information he had received. As Clerico walked up to defendant, defendant appeared nervous, so Clerico pat-searched him for weapons. At the time,

---

[1] All statutory references are to the Health and Safety Code unless otherwise indicated.

defendant was wearing shorts, a T-shirt, gym socks and tennis shoes. Clerico felt a lump in defendant's left sock and a suspected baggie of rock cocaine in the right front area of defendant's shorts. When asked if he had any narcotics on him, defendant said no and gave Clerico permission to search. Clerico then pulled on the waistband of defendant's shorts and a baggie of what Clerico believed to be rock cocaine fell out onto the sidewalk. Six "rocks," each about a quarter gram in size, were in the baggie. Clerico also found $56 in paper currency in defendant's sock.

Defendant was arrested and advised of his *Miranda* rights, which he understood and waived. Clerico asked defendant about the rock cocaine and defendant stated he was currently on parole for armed robbery and narcotics charges and that he earned his money by operating a haywire business with his grandfather. Defendant did not want to go to jail and asked Clerico for a break, stating that if he were not jailed he would tell on others who had more cocaine than he did.

Based on his training and experience, Clerico was ruled to be qualified as an expert on possession of rock cocaine for sale. Clerico gave his expert opinion that the cocaine was possessed for sale based on the size and number of the rocks, the fact that defendant did not have smoking paraphernalia on him and did not appear to be under the influence, and the currency that he possessed.

Criminalist Brenda Smith analyzed the contents of the baggie and determined that they weighed 1.01 grams in the aggregate and contained some cocaine. She did not do a quantitative test to determine the percentage of cocaine in the material. Smith was not asked and did not indicate whether the cocaine was cocaine base or whether a test to make that determination had been undertaken. Nor did she testify the substance was rock cocaine. She did testify that she could not tell that the substance contained cocaine by its physical appearance alone.

While Clerico referred to the substance as rock cocaine throughout his testimony and was conversant in the distinction between cocaine base and cocaine hydrochloride, he also did not indicate whether a chemical analysis had been performed to determine if it was cocaine base.

## DISCUSSION

### I. IS THERE SUFFICIENT EVIDENCE THAT THE COCAINE IN DEFENDANT'S POSSESSION WAS COCAINE BASE?

Defendant contends that there is no substantial evidence that proves the cocaine possessed by him was cocaine base as required by the statute under which he was convicted.

■ In evaluating the sufficiency of the evidence on appeal, we must view the whole record in the light most favorable to the judgment below and presume in support of the judgment every fact which the trier of fact could reasonably deduce from the evidence. (*People* v. *Johnson* (1980) 26 Cal.3d 557, 578 [162 Cal.Rptr. 431, 606 P.2d 738, 16 A.L.R.4th 1255].) Before the judgment may be set aside for insufficiency of evidence, it must clearly be shown that upon no hypothesis whatever is there substantial evidence. (*People* v. *Redmond* (1969) 71 Cal.2d 745, 755 [79 Cal.Rptr. 529, 457 P.2d 321].) Substantial evidence is evidence that is reasonable, credible, of solid value and reasonably inspires confidence in the judgment. (*People* v. *Green* (1980) 27 Cal.3d 1, 55 [164 Cal.Rptr. 1, 609 P.2d 468].)

Defendant was charged with and convicted of possessing "rock cocaine" in violation of section 11351.5, which provides: "Except as otherwise provided in this division, every person who possesses for sale or purchases for purposes of sale cocaine base which is specified in paragraph (1) of subdivision (f) of Section 11054, shall be punished by imprisonment in the state prison for a period of three, four, or five years."

Section 11054 provides in pertinent part: "(a) The controlled substances listed in this section are included in Schedule I.

".     .     .     .     .     .     .     .     .     .     .     .     .     ".     .     .     .     .     .

"(f) Unless specifically excepted or unless listed in another schedule, any material, compound, mixture, or preparation which contains any quantity of the following substances having a stimulant effect on the central nervous system, including its isomers:

"(1)  Cocaine  base."

Section 11055 provides in pertinent part: "(a) The controlled substances listed in this section are included in Schedule II.

"(b) Any of the following substances, except those narcotic drugs listed in other schedules, whether produced directly or indirectly by extraction from substances of vegetable origin, or independently by means of chemical synthesis, or by combination of extraction and chemical synthesis:

".     .     .     .     .     .     .     .     .     .     .     .     .     .     .     .     .     .

"(6) Cocaine, except as specified in Section 11054." As can be seen, section 11054, subdivision (f)(1) refers to "Cocaine base"; section 11055, subdivision (b)(6) refers to "Cocaine, except as specified in Section 11054,"

which, as noted above, refers to cocaine base. Therefore, it is clear that the statutes distinguish "cocaine base" from "cocaine." The Attorney General does not dispute this apparent distinction. However, the statutes do not further define "cocaine base."

Pursuant to Evidence Code section 452, defendant requests that this court take judicial notice of the fact that there is a chemical difference between cocaine base and cocaine hydrochloride. He also requests this court to take judicial notice of Senate Bill No. 943, chapter 1174, and its legislative history. The Attorney General does not oppose these requests and they are granted.

It is apparent from the legislative history of Senate Bill No. 943, chapter 1174, that the Legislature regards cocaine base and cocaine hydrochloride as different drugs and they are treated as such. The Senate third reading of Senate Bill No. 943, as amended September 1, 1987, provides that under the then current law, "1) All forms of cocaine except cocaine hydrochloride are Schedule I controlled substances. 2) Cocaine hydrochloride is a Schedule II controlled substance. . . . *This bill*: 1) Redefines Schedule I cocaine as 'cocaine base.' 2) Redefines Schedule II cocaine as 'cocaine except as specified in Schedule I.' " Under the subtitle "COMMENTS," it is stated:

"1) Purpose.

"a) According to the sponsor, the Office of Criminal Justice Planning (OCJP), legislation passed last session (see Comment #2, below) reclassified cocaine, except for cocaine hydrochloride, as a Schedule I controlled substance. That bill failed to effectuate the original intent of the legislation, which was to put only cocaine in the freebase form (commonly known as 'rock,' 'crack,' or 'freebase') into Schedule I. According to the sponsor, 'This also created a problem for crime lab analysts. Essentially the scheduling scheme requires them to employ an approach which requires the ascertainment or elimination of cocaine hydrochloride as the controlled substance in every case. The process underlying this approach is considered complicated and costly.'

" 'Crime lab chemists contend that a process which seeks to ascertain cocaine base is simpler and less costly. The scheduling changes proposed by this bill would establish a basis for employing the simpler and less costly process.' "

Furthermore, the penalty for possession for sale of cocaine base (three, four, and five years in prison) is higher than for possession for sale of all

other forms of cocaine (two, three, and four years in prison). (See §§ 11351.5 and 11351.)

Finally, Officer Clerico testified during the hearing to qualify him as an expert witness that he has participated in controlled classroom demonstrations where he "produced rock cocaine conversion from powder cocaine," which "is called cocaine hydrochloride." Thus, it appears clear that there is a chemical difference between cocaine base and cocaine hydrochloride.

Clark's Isolation and Identification of Drugs (2d ed.) copyright 1986 by the Pharmaceutical Society of Great Britain, at page 489, of which defendant requests and the Attorney General agrees we may take judicial notice, sets forth different chemical formulas for "cocaine" and "cocaine hydrochloride." However, neither that publication nor any other matter of which we are requested to take judicial notice contains a definition of or the chemical formula for "cocaine base."

The Attorney General does not dispute that chemical analysis could have established that the cocaine in defendant's possession was cocaine base. Rather, he simply contends that the evidence here is sufficient based on the uncontradicted testimony of Officer Clerico distinguishing "rock" or "base" cocaine from "powder" or cocaine hydrochloride, the packaging and appearance of the material, the criminalist's chemical analysis, which proved the material contained cocaine, and defendant's statements to Clerico.

It is true that Officer Clerico in his testimony used the terms "cocaine base," "rock cocaine," and "crack" interchangeably and he also referred to the substance in the two baggies possessed by defendant as "what I believed to be rock cocaine." However, the officer was not qualified as an expert in the identification of cocaine or cocaine base, but rather as an expert in the possession of rock cocaine for sale. Moreover, Officer Clerico never testified regarding making any chemical tests or chemical analysis of the substance found in defendant's possession. (See, e.g., *Cook* v. *United States* (9th Cir. 1966) 362 F.2d 548, 549; *People* v. *McChristian* (1966) 245 Cal.App.2d 891, 895-897 [54 Cal.Rptr. 324].)

While evidence was presented that powdered cocaine or cocaine hydrochloride could be converted to cocaine base or "rock cocaine," there was no evidence presented that cocaine hydrochloride could not also appear in rock or chunk form. Neither Officer Clerico nor any other expert witness testified that physical appearance alone was a sufficient basis for the identification of a substance containing "cocaine base" as opposed to a substance containing

"cocaine" as those terms are used in sections 11054, subdivision (f)(1), and 11055, subdivision (b)(6).

We therefore conclude that while the evidence was sufficient to establish defendant possessed some form of cocaine, it was insufficient to establish beyond a reasonable doubt that defendant possessed cocaine base. It necessarily follows that there is an absence of substantial evidence to support defendant's conviction under section 11351.5.

## II. MAY THE JUDGMENT BE MODIFIED TO A NECESSARILY LESSER INCLUDED OFFENSE?

Penal Code section 1260 provides regarding the power of the appellate court in criminal cases: "The court may reverse, affirm, or modify a judgment or order appealed from, or reduce the degree of the offense or attempted offense or the punishment imposed, and may set aside, affirm, or modify any or all of the proceedings subsequent to, or dependent upon, such judgment or order, and may, if proper, order a new trial, and may, if proper, remand the cause to the trial court for such further proceedings as may be just under the circumstances."

■ While Penal Code section 1260 appears to confer plenary power of modification on a reviewing court, it was not so intended. According to *People* v. *Romo* (1967) 256 Cal.App.2d 589, 596 [64 Cal.Rptr. 151], that section must be read in connection with Penal Code section 1181, subdivision 6, which provides: "When the verdict or finding is contrary to law or evidence, but if the evidence shows the defendant to be not guilty of the degree of the crime of which he was convicted, but guilty of a lesser degree thereof, or of a lesser crime included therein, the court may modify the verdict, finding or judgment accordingly without granting or ordering a new trial, and this power shall extend to any court to which the cause may be appealed." (See also *People* v. *Enriquez* (1967) 65 Cal.2d 746, 749-750 [56 Cal.Rptr. 334, 423 P.2d 262]; *In re Hess* (1955) 45 Cal.2d 171, 173-175 [288 P.2d 5].) While it dealt with the trial court's power to convict only of necessarily included offenses or offenses charged, *People* v. *Lohbauer* (1981) 29 Cal.3d 364, 368-369 [173 Cal.Rptr. 453, 627 P.2d 183], by analogy, also appears to limit a reviewing court's power to modify a conviction to only those circumstances where the evidence would support a conviction of a lesser necessarily included offense, a lesser degree offense or an offense that was charged by the plaintiff. Otherwise, there is a due process violation.

■ Here it is clear that the accusatory pleading did not include a charge *of violation of section* 11351. Thus to properly modify defendant's

conviction to that offense, that offense must be a lesser included offense of section 11351.5.

(a) *Is possession of cocaine for sale in violation of section 11351 a lesser necessarily included offense of possession of base cocaine for sale in violation of section 11351.5?*

We asked the parties to address this question and in supplemental letter briefs both defendant's appellate counsel and the Attorney General agree that it is not. ■ We also agree and adopt, with certain deletions and changes in form, the reasons as set forth by the Attorney General:

"In *People* v. *Wolcott* (1983) 34 Cal.3d 92 [192 Cal.Rptr. 748, 665 P.2d 520], our Supreme Court stated: 'An uncharged crime is included in a greater charged offense if either (a) the greater offense cannot be committed without committing the lesser, or (b) the language of the accusatory pleading encompasses all the elements of the lesser offense.' (*Id.* at p. 98; see also *People* v. *Barrick* (1982) 33 Cal.3d 115, 133 [187 Cal.Rptr. 716, 654 P.2d 1243].)

"The Court further stated: 'When the accusatory pleading describes a crime in the statutory language, as in the present case, the test for a lesser included offense is simply that, where the charged "offense cannot be committed without necessarily committing another offense, the latter is a necessarily included offense." ' (*Wolcott, supra*, at p. 99; see also *People* v. *Pendleton* (1979) 25 Cal.3d 371, 382 [158 Cal.Rptr. 343, 599 P.2d 649].)

"In the case at bench, the accusatory pleading charged appellant 'did willfully and unlawfully have in [his] possession for purpose of sale a controlled substance, to wit: rock cocaine, in violation of Section 11351.5 of the Health and Safety Code, a felony.'

"Section 11351.5 reads: 'Except as otherwise provided in this division, every person who possesses for sale or purchases for purposes of sale cocaine base which is specified in paragraph (1) of subdivision (f) of Section 11054, shall be punish[ed] by imprisonment in the state prison for a period of time of three, four, or five years.'

"The only difference in the pleading and the statute is the substitution of the term 'rock cocaine' for 'cocaine base.' Assuming the two terms are synonymous, it is submitted the pleading is in the statutory language.[1] Thus, the question is whether a violation of section 11351.5 cannot be committed without necessarily committing a violation of section 11351.

"Health and Safety Code section 11351.5 does not require proof of possession of any controlled substance other than 'cocaine base.' (See Health and Saf. Code, § 11054(f)(1).) On the other hand, Health and Safety Code section 11351 makes it unlawful to possess 'for sale . . . (1) any controlled substance specified in subdivision (b), (c), or (e) of Section 11054, . . .' Subdivision (b)(6) of section 11055 lists: 'Cocaine, *except* as specified in Section 11054,' i.e., all cocaine except cocaine base. (Emphasis added; . . . .) ▆▆ The foregoing shows that 'cocaine base' is specifically excluded from the operation of section 11351. A violation of section 11351.5 can be committed without necessarily committing a violation of section 11351. Therefore, section 11351 is not a necessarily included offense of section 11351.5." The Attorney General's footnote 1 reads: "It is submitted that the uncontradicted testimony of Officer Clerico shows the two terms are synonymous."

(b) *Is possession of cocaine in violation of section 11350 a lesser necessarily included offense of section 11351.5?*

We also asked the parties to address this question and in supplemental letter briefs both conclude that the answer is yes. However, we cannot agree with their conclusion for the following reasons.

At the time of the offense charged in the information, section 11350 provided in pertinent part: "(a) Except as otherwise provided in this division, every person who possesses (1) any controlled substance specified in (b) or (c), or paragraph (1) of subdivision (f) Section 11054, . . . or specified in subdivision (b), (c), or (g) of Section 11055 . . . shall be punished by imprisonment in the state prison."

As we have previously noted, paragraph (1) of subdivision (f) of section 11054 specifies "Cocaine base" and paragraph (6) of subdivision (b) of section 11055 specifies "Cocaine, except as specified in Section 11054." This latter phrase must necessarily be read as meaning, *all other forms of cocaine, excluding cocaine base.* Possession of cocaine base is therefore an offense separate and distinct from the offense of possession of all other forms of cocaine under the specific language of section 11350. Under the clear language of the statutes, possession of cocaine base within the meaning of section 11350 is a lesser necessarily included offense of possession of cocaine base for sale in violation of section 11351.5. Similarly, possession of cocaine within the meaning of section 11350 is a lesser necessarily included offense of possession of cocaine for sale in violation of section 11351. However, for the same reason that possession of cocaine for sale (§ 11351) cannot be a lesser necessarily included offense of possession of cocaine base for sale

(§ 11351.5), possession of cocaine (§ 11350) cannot be a lesser necessarily included offense of possession of cocaine base for sale (§ 11351.5).

Having determined that neither possession of cocaine within the meaning of section 11350 nor possession of cocaine for sale within the meaning of section 11351 are lesser necessarily included offenses of the charged offense of possession of rock (base) cocaine in violation of section 11351.5, we are without power to modify the judgment pursuant to Penal Code sections 1260 and 1181. Having further concluded that the evidence is insufficient to support defendant's conviction of the charged offense, we must reverse without remand for retrial. (*Burks* v. *United States* (1978) 437 U.S. 1, 10-11 [57 L.Ed.2d 1, 8-10, 98 S.Ct. 2141]; *Greene* v. *Massey* (1978) 437 U.S. 19 [57 L.Ed.2d 15, 98 S.Ct. 2151]; *People* v. *Pierce* (1979) 24 Cal.3d 199, 209-210 [155 Cal.Rptr. 657, 595 P.2d 91].)

## DISPOSITION

The judgment is reversed and the trial court is directed to dismiss the information, with prejudice.

Ardaiz, J., and Dibiaso, J., concurred.