Filed 7/25/14  In re J.R. CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| In re J.R., a Person Coming Under the Juvenile Court Law. | C075039 |
| THE PEOPLE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>J.R.,<br><br>Defendant and Appellant. | (Super. Ct. No. JV133901 ) |

J.R., a 14-year-old minor, appeals from the juvenile court's order sustaining a Welfare and Institutions Code section 602, subdivision (a) petition alleging he possessed oxycodone.  The minor claims there is insufficient evidence to support the court's finding that the pills he possessed were indeed oxycodone, a controlled substance.  We agree and reverse the judgment.

1

**FACTUAL AND PROCEDURAL BACKGROUND**

Officers responding to a call of shots fired at approximately 2:00 a.m. on August 10, 2013, encountered the minor and two other juveniles standing on a street corner about a block from the subject area. In the course of searching the minor, the officers located a small plastic bag containing white powder, which field tested positive for cocaine (but was later revealed by chemical analysis not to be cocaine), three white pills, and a tan pill (which was not identified as containing any controlled substance). The white pills bore the number "512," and the minor told the officers they were oxycodone. The minor told the officers he had purchased the "cocaine" that day and had taken the white pills from his mother. The officers confirmed with poison control that the white pills were oxycodone based on their physical description as white pills bearing the numbers "512."

The petition alleged the minor came within the ambit of Welfare and Institutions Code section 602, subdivision (a) based on two counts of possession of a controlled substance (Health & Saf. Code, § 11350, subd. (a); count one -- cocaine; count two -- oxycodone). Count one was dismissed before trial for lack of evidence.

At trial, an expert in the analysis of controlled substances opined that the pills contained oxycodone. He identified them by their markings without performing any chemical analysis of the pills. He testified this was his standard procedure for identifying pharmaceuticals because of "manpower," and that the marking "512" corresponded to a particular dosage of pills comprised of oxycodone and acetaminophen and manufactured by Mallinckrodt Pharma. When he had analyzed pills bearing the marking "512" in *previous* cases, these analyses had demonstrated the presence of oxycodone. On cross-examination, the criminalist admitted it would be possible for clandestine street manufacturers to produce, for example, ecstasy pills from a powder form using a pill press, made with "different types of impressions."

2

The juvenile court sustained the petition, finding count two to be true. The court adjudged the minor a ward of the court, committed him to juvenile hall to serve 68 days (with credit for time served of 68 days), and ordered him to report to juvenile probation for placement.

## DISCUSSION

It was the People's burden to prove the substance possessed by the defendant was a controlled substance. (CALCRIM No. 2304; see also *People v. McChristian* (1966) 245 Cal.App.2d 891, 896 (*McChristian*).) "Ordinarily the narcotic character of a substance is proved by a trained expert who has made a chemical analysis thereof." (*People v. Galfund* (1968) 267 Cal.App.2d 317, 320 (*Galfund*).) As we will explain, while may well be possible in *some* cases to prove possession of a controlled substance without chemical analysis, in *this* case there was insufficient evidence to support the court's conclusion that defendant possessed oxycodone beyond a reasonable doubt.

Criminal allegations in a delinquency hearing are subject to the same proof beyond a reasonable doubt standard as applied to criminal court. (*In re Winship* (1970) 397 U.S. 358, 368 [25 L.Ed.2d 368, 377-378].) "When the sufficiency of the evidence is challenged on appeal, we apply the familiar substantial evidence rule. We review the whole record in a light most favorable to the judgment to determine whether it contains substantial evidence, i.e., evidence that is credible and of solid value, from which a rational trier of fact could find beyond a reasonable doubt that the accused committed the offense." (*In re Ryan D.* (2002) 100 Cal.App.4th 854, 859.) Substantial evidence must "reasonably inspire[] confidence in the judgment." (*People v. Adams* (1990) 220 Cal.App.3d 680, 685 (*Adams*), citing *People v. Green* (1980) 27 Cal.3d 1, 55.)

Whether an expert's identification *by sight* of a controlled substance, when combined with circumstantial evidence, is sufficient to prove its character beyond a reasonable doubt is a fact-based question. (But see *Cook v. United States* (9th Cir. 1966) 362 F.2d 548, 549 ["whether or not a powder or substance is a narcotic cannot be

3

determined by a mere inspection of its outward appearance"].)  Some California courts have found substantial evidence to support a conviction for possession or sale of a controlled substance in the absence of chemical analysis.  Those cases, however, are distinguishable, and do not support the court's finding here.

For example, in *People v. Sonleitner* (1986) 183 Cal.App.3d 364 at pages 368 and 369, the court found substantial evidence the white crystalline powder the defendant flushed down the toilet was cocaine based on testimony that:  (1) officers saw him flush the powder; (2) he was in and owned the house where this happened; (3) officers had purchased cocaine that originated from the house in a police sting operation earlier that day; (4) the codefendant involved in the sting operation indicated he would have to go back to the same house to retrieve the remainder of the cocaine, and (5) a narcotics officer testified the powder resembled cocaine as opposed to a cutting agent based on its physical appearance.  (*Id.* at pp. 369-370.)

In *Galfund*, *supra*, 267 Cal.App.2d at page 321, the court found there was substantial evidence the defendant possessed heroin where officers:  (1) heard defendant make comments using terms common among heroin users to describe heroin, paraphernalia, and use; (2) saw, in the same room as defendant, a toy balloon be cut open exposing a powder inside; (3) saw the powder be placed onto a spoon with a bit of water from an eyedropper; (4) saw the mixture being heated and the liquid drawn into an eyedropper; and (5)  saw a needle placed on the eyedropper and then inserted into a vein on a tied arm.  Similarly, in *People v. Marinos* (1968) 260 Cal.App.2d 735 at pages 738 and 739 (*Marinos*), the court found the corpus delicti of the crime of possession of marijuana was proved beyond a reasonable doubt where the officers, in a car with the defendant, smelled the unique odor of marijuana, and saw the defendant smoking "a

small loosely-wrapped cigarette," even though she disposed of it before the officers could seize it.[1]

Here, the entirety of the evidence to establish that the three white pills were oxycodone is the minor's statement and the witnesses' observations that the pills looked like oxycodone due to their markings. But the minor also told the officers that he had cocaine, when he did not. Nor did the tan pill contain a controlled substance. The minor's classification of the substances that he was carrying with him was thus unsound, and could not form the basis for a finding beyond a reasonable doubt that he possessed a controlled substance. And while the additional testimony certainly confirmed that the white pills *looked like* oxycodone, the criminalist candidly admitted that a street vendor could manufacture counterfeit pills using a pill press, although he was not specifically asked about oxycodone.[2] There was no chemical analysis of the pills, nor was there evidence corroborating the minor's admission, such as evidence that he actually had *access* to oxycodone in the home or elsewhere, through his mother, a prescription. or otherwise. Here there was only a number, "512," stamped on the pill to distinguish it from any other white pill bearing any other markings. There was no evidence of the pills being referenced, used, smelled, or otherwise experienced by those with specialized knowledge in a manner consistent with the pills' classification as a controlled substance, as described in *Sonleitner*, *Galfund*, and *Marinos*. Added to this absence of evidence was testimony that markings on pills can be faked.

---

[1] Marinos also admitted she had marijuana in her purse, which was subsequently found, but as she was heavily intoxicated at the time of her confession, the court suppressed her admission and the marijuana found in her purse. (*Marinos*, *supra*, 260 Cal.App.2d at pp. 738-739.)

[2] Although the example cited by the criminalist was the street drug ecstasy, he did not limit his testimony to that one drug, although he added that ecstasy would bear markings different than oxycodone.

On these facts, this case is analogous to those where courts found insufficient evidence of narcotic possession where there was no chemical analysis of the alleged controlled substance.  (*McChristian*, *supra*, 245 Cal.App.2d at pp. 895, 897 [inadequate evidence of narcotic possession where officers saw the defendant suspiciously hide or dispose of balloons commonly used to store heroin but found "no heroin or any substance purporting to be heroin" on the defendant]; *Adams*, *supra*, 220 Cal.App.3d at pp. 684 & 688 [insufficient evidence substance in the defendant's possession was cocaine base (as charged and statutorily required) as opposed to another form of cocaine where no expert opined the substance was identifiable or identified by physical appearance alone, and no chemical analysis of the substance was performed].)

Accordingly, we find insufficient evidence to support the trial court's conclusion that the alleged controlled substance in defendant's possession was the controlled substance oxycodone.

**DISPOSITION**

The judgment is reversed.


      DUARTE      , J.


We concur:


      NICHOLSON      , Acting P. J.


      MURRAY      , J.