Filed 1/8/15  P. v. Proctor CA2/4

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| THE PEOPLE, | B253609 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. KA102812) |
| v. | |
| MICHAEL E. PROCTOR, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Mike Camacho, Judge.  Affirmed.

Joshua L. Siegel, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Lance E. Winters, Assistant Attorney General, Steven D. Matthews and David E. Madeo, Deputy Attorneys General, for Plaintiff and Respondent.

A jury convicted defendant Michael E. Proctor of sale of cocaine (Health & Saf. Code, § 11352, subd. (a))**1** and possession of a smoking device (§ 11364.1, subd. (a)(1), a misdemeanor). The trial court found true allegations that defendant had suffered two prior strike convictions (Pen. Code, §§ 667, subds. (b)-(i), 1170.12, subds. (a)-(d)) and a prior drug conviction (§ 11370.2, subd. (a)). The court struck the prior strike convictions and sentenced defendant to a total term of six years in state prison. On appeal from the judgment of conviction, defendant contends: (1) substantial evidence does not support his conviction of violating section 11352, subdivision (a), because he was charged with sale of cocaine, but the evidence proved that he sold cocaine base; (2) the trial court erred in failing to instruct on the principle that an equal co-purchaser of narcotics cannot be guilty of aiding and abetting the seller in providing narcotics to another co-purchaser; (3) the trial court did not adequately respond to the jury's question concerning aiding and abetting liability; and (4) the trial court erred in not conducting an in camera review of complaints of dishonesty and filing false police reports by the undercover officers involved in the sale of cocaine of which defendant was convicted . We disagree with these contentions, and affirm the judgment.

## BACKGROUND

*Prosecution Evidence*

1. *The Charged Sale*

On August 13, 2013, defendant approached Pomona Police Officer Jesus Cardenas and his female partner at a gas station at San Bernardino Avenue and Indian Hill Boulevard in Pomona. The officers were wearing civilian clothes in an

---

**1** All undesignated section references are to the Health and Safety Code.

2

unmarked vehicle, operating undercover as part of a narcotics buy program supervised by the United States Marshal's Service.

Defendant asked what they needed. Officer Cardenas responded that he wanted "a dub," slang for $20 worth of narcotics. Defendant said that he did not have anything on his person, and asked, "What do you want?" Officer Cardenas specified "a rock" and asked where he could get one. Defendant said that there was some on Richard Street and that he could take the officers there. Officer Cardenas asked why he could not go there himself. Defendant replied that "they" did not know him. Officer Cardenas got in the back seat (his partner driving) and defendant sat in the front passenger seat. Defendant then directed them to a cul-de-sac off San Bernardino Avenue. Officer Cardenas gave defendant $20 and the officers waited in the car while defendant exited the car and entered a residence on the corner. He returned in three or four minutes with an off-white colored rock wrapped in cellophane and placed it on the center console.

Defendant asked the officers to drive him to the intersection of Bonnie Brae. There, defendant asked for a piece of the rock -- according to Officer Cardenas, defendant's "reward or price" for facilitating the sale. Using his mouth, defendant broke off a chunk and exited the car with it. The officers drove off.

Other officers arrested defendant and found on his person a glass pipe used for smoking rock cocaine. They did not find the piece of the rock. An analysis of the remainder of the rock left with the officers showed that it was ".25 grams . . . containing cocaine in the base form."

### 2. *The Prior Sale*

The prosecution introduced evidence of a prior sale of rock cocaine on November 18, 2009, in which defendant acted as the "hook," i.e., a person,

3

typically a narcotics user, who takes the buyer to the seller and usually receives a "bump" (a piece of the purchased rock) as his price for facilitating the buyer's purchase.

In the prior case, Los Angeles Police Officer Asia Hodge observed defendant converse with an undercover informant, who gave defendant a prerecorded $20 bill. Defendant and the informant walked down an alley, where Officer Hodge lost sight of them.

The informant was wearing a wire, and Los Angeles Police Officer Joseph Meyer monitored his conversation. The informant said to defendant something like, "Hey, they're still working over there[?]" Defendant directed the informant to go around the corner of the alley. The informant then asked a third person, who was later arrested and identified by the last name of Martinez, to buy "a dub." Martinez replied something like, "All right, relax." Defendant then asked for "a bump," and the informant agreed. The informant then signaled to Officer Meyer that the transaction had taken place by using the code words, "This is good shit, man." Shortly thereafter, defendant said, "Thank you," referring to having received a piece of the rock from the informant.

Officer Hodge observed defendant and the informant reappear at the mouth of the alley, and saw the informant hand defendant something, after which they separated. Thereafter, the informant met with another officer and gave him the rock he had purchased from Martinez. The item was later tested at the station with a positive result for cocaine. When defendant was arrested shortly after the transaction, a chip of cocaine was found on his person.

*Defense*

### 1. *The Charged Sale*

Defendant testified that he worked for tips at the gas station by washing windshields and helping pump gas and fill tires. According to defendant, Officer Cardenas asked defendant if he was aware of the cul-de-sac. Defendant said he was aware of people going there. The officer said he would give defendant $5 for a bag of "chronic" (marijuana). The female officer asked if he had a pipe for marijuana, and he said that he did.

Defendant rode with the officers to the cul-de-sac, where they gave him money and dropped him off. At the cul-de-sac, defendant asked a woman in a car for a dub. The woman said that she would be back in 10 to 15 minutes. Defendant went back to the officers and said that he was waiting. Officer Cardenas got angry and the female office told defendant to get in the car. They drove off and later stopped. When defendant got out, the female officer asked for his pipe, produced a rock, and asked if he wanted a piece. She broke off a piece and gave it to him. After the officers left, he heard sirens and put the rock in his mouth.

### 2. *Uncharged Sale*

Defendant admitted that in 2009 he and an undercover informant bought a rock for $20.

## DISCUSSION

### I. *Sufficiency of the Evidence*

The information charged defendant with sale of a controlled substance in violation of section 11352, subdivision (a), "to wit, cocaine." As here relevant, the jury was instructed that to prove defendant guilty of this charge, the prosecution

had to prove that the controlled substance sold was "cocaine." The verdict form returned by the jury found defendant guilty of "sale of a controlled substance, to wit, cocaine, in violation of . . . section 11352(a)." However, the prosecution evidence showed that the substance sold was "cocaine in the base form."

Defendant contends that proof he sold "cocaine in the base form" is insufficient to support his conviction for selling "cocaine." We disagree.

First, although cocaine in its base form is chemically different from cocaine hydrochloride (commonly known as powder cocaine), both are "cocaine." "[T]hey have the same active ingredient and produce the same physiological and psychotropic effects. [Citation.] The key difference between them is the method by which they generally enter the body; smoking cocaine in its base form . . . allows the body to absorb the active ingredient quickly, thereby producing a shorter, more intense high than obtained from insufflating cocaine hydrochloride." (*DePierre v. U.S.* (2011) ___ U.S. ___, 131 S.Ct. 2225, 2228-2229.) Having the same active ingredient, cocaine base and powder cocaine are merely different isomers or molecular structures of cocaine. (*People v. Howell* (1990) 226 Cal.App.3d 254, 261.) "Cocaine base . . . is simply cocaine hydrochloride after the hydrochloride is removed from the cocaine during the heating process." (*Id*. at p. 260.) Thus, while the two substances do not share precisely the same molecular structure, both cocaine base and powder cocaine are nonetheless "cocaine." (*Id*. at p. 261 ["cocaine base is not cocaine hydrochloride although both substances are cocaine"]; see *United States v. Dowdell* (1st Cir. 2010) 595 F.3d 50, 53 [cocaine base is merely an isomer of cocaine]; *United States v. Pierce* (5th Cir. 1990) 893 F.2d 669, 676 [same].)

Second, for purposes of criminal liability, section 11352 draws no distinction between cocaine base and cocaine. Section 11352 provides in relevant

part: "[E]very person who . . . sells . . . any controlled substance specified in . . . paragraph (1) of subdivision (f) of Section 11054, . . . or specified in subdivision (b) . . . of Section 11055, . . . shall be punished by imprisonment pursuant to subdivision (h) of Section 1170 of the Penal Code for three, four, or five years." The controlled substance specified in section 11054, subdivision (f)(1), is "[c]ocaine base." The controlled substance specified in 11055, subdivision (b)(6), is "[c]ocaine, except as specified in [s]ection 11054." The manner in which cocaine is described in section 11055, subdivision (b)(6) -- "[c]ocaine, except as specified in [s]ection 11054," meaning cocaine base -- makes clear that the Legislature considers cocaine base to be a form of cocaine.

For these reasons, the evidence that defendant sold cocaine base was sufficient to prove that defendant sold cocaine in violation of section 11352. Finally, section 11352 must be distinguished from section 11351.5, which criminalizes only possession for sale of cocaine base. (*People v. Howington* (1991) 233 Cal.App.3d 1052, 1058.) As held in *People v. Adams* (1990) 220 Cal.App.3d 680, 687-688, relied upon by defendant, proof that a defendant possessed cocaine for sale is insufficient to prove that the defendant possessed the specific substance covered by section 11351.5 – cocaine base. But as we have explained, section 11352 does not draw a distinction between cocaine base and cocaine for purposes of criminal liability. Sale of either violates the statute.

II.    *Aiding and Abetting Instructions*

Defendant contends that the trial court erred in failing to instruct that an equal co-purchaser of narcotics for personal use is not guilty as an aider and abettor of the seller in furnishing drugs to the other co-purchaser. However, defendant forfeited the issue by failing to request such an instruction in the trial

7

court.  The duty to instruct sua sponte is limited to those "'general principles which are necessary for the jury's understanding of the case.  [The trial court] need not instruct on specific points or special theories which might be applicable to a particular case, absent a request for such an instruction.'  [Citations.]" (*People v. Garvin* (2003) 110 Cal.App.4th 484, 488-489.)

Here, the trial court instructed on aiding and abetting pursuant to CALCRIM Nos. 400 and 401, and on sale of a controlled substance pursuant to CALCRIM No. 2300.  These pattern instructions covered the general legal principles relevant to defendant's potential liability for aiding and abetting the seller in providing cocaine to Officer Cardenas, including the element that the aider and abettor must intend to aid and abet the perpetrator (here, the seller) in the commission of the crime (here, sale of cocaine to Officer Cardenas).  (See *People v. Beeman* (1984) 35 Cal.3d 547, 560 [aider and abettor must act "with the intent or purpose of facilitating the perpetrator's commission of the crime"].)  The theory that a co-purchaser for personal use cannot be guilty of aiding and abetting the seller rests on the notion that the co-purchaser does not intend to facilitate the seller in providing drugs to the other co-purchasers, but rather intends simply to purchase drugs for his own use, albeit in conjunction with one or more others at the same time. (*People v. Edwards* (1985) 39 Cal.3d 107, 113-114, & fn. 5.)  Thus, an instruction on this principle "would have constituted a pinpoint instruction highlighting a defense theory that attempted to raise a doubt concerning an element (intent) of a crime that the prosecution must prove beyond a reasonable doubt.  The burden therefore was upon defendant to request that the jury be instructed" on the principle.  (*People v. Jennings* (2010) 50 Cal.4th 616, 675.)  Having failed to request such a pinpoint instruction, defendant forfeited the issue on appeal.

Even if the claim were not forfeited, we would reject it. As explained in *Edwards, supra,* 39 Cal.3d at page 114, a co-purchaser does not aid and abet the seller "at least where the individuals involved are truly 'equal partners' in the purchase and the purchase is made strictly for each individual's personal use. Under such circumstances, it cannot reasonably be said that each individual has 'supplied' heroin to the others." The court added, *id.* at footnote 5, "We expect there will be few cases involving a copurchase by truly equal partners. Where one of the copurchasers takes a more active role in instigating, financing, arranging or carrying-out the drug transaction, the 'partnership' is not an equal one and the more active 'partner' may be guilty of furnishing to the less active one. Furthermore, one who acts as a go-between or agent of either the buyer or seller clearly may be found guilty of furnishing as an aider and abettor to the seller."

Here, no substantial evidence (indeed, no evidence at all) supported the theory that defendant was a truly equal partner in the purchase of cocaine. Under Officer Cardenas' version of events, defendant was a go-between for the officers and the seller: defendant asked what the officers wanted, led them to the seller's location, and made the purchase using money supplied by the officers. He took a more active role than the officers and was obviously not a co-equal partner in the sale, even though he was given a piece of the cocaine as his fee for actively facilitating the transaction.

Defendant's version of events was wholly inconsistent with the theory that he was a co-equal purchaser of cocaine. Defendant testified that he was solicited by the undercover officers to help purchase marijuana (not cocaine), and was promised $5 for doing so. According to defendant, the marijuana purchase did not occur because Officer Cardenas became angry waiting for the seller (who was contacted by defendant) to return. Defendant explained that the rock cocaine

found on his person was not from a purchase he made for the officers, but rather was given to him by the female officer. Nothing in this scenario suggests that defendant was an equal co-purchaser of cocaine with the officers. In short, because no substantial evidence supported an instruction on co-purchasers, the trial court had no obligation to instruct on the principle, whether a request had been made or not. (*People v. Breverman* (1998) 19 Cal.4th 142, 162.)

III.  *Jury Inquiry*

Defendant contends that in response to a jury question concerning aiding and abetting, the trial court erred in not instructing on the principle that an equal co-purchaser cannot be guilty of aiding and abetting the seller. There was no error.

During deliberations, the jury submitted the following question to the court: "(1)  Please advise if the cocaine sale (count #1) applies to anyone in the sales transaction, regardless of their role as a buyer; seller; and/or intermediary/agent? (2)  Does it matter in count #1 who approached who to start the transaction? (3)  Is there a distinct/separate legal charge that differentiates buying vs. selling, or does count #1 apply to both buy and sell?"

The court discussed the questions with counsel. As for question 1, the court suggested that it would refer the jury to the instructions on aiding and abetting (CALCRIM Nos. 400 and 401). Defense counsel disagreed, and suggested that the answer to question 1 was "no," because aiding and abetting liability would not apply to everyone in the transaction, and also suggested that the court simply tell the jurors that they had the instructions necessary to resolve the issue. As for question 2, the court suggested that the correct response was that the significance of who approached whom was for the jury to decide. As for question 3, the court

10

stated, in substance, that it did not want the jury to consider possible charges other than those involved in this case.

The jurors were brought into the courtroom and the court made the following comments:

"Now this communication is requesting court assistance in terms of clarification of principles of law. That's what I'm permitted to do. There [are] three requests within one written document, and we will take these on one at a time.

"The first inquiry from the jury reads as follows:

"Please advise if the cocaine sale, count 1, applies to anyone in the sales transaction, regardless of their role as a buyer, seller and/or intermediary or agent.

"And, again, ladies and gentlemen, the answer to your question lies within the jury instructions. And I can focus you on instruction 400 and 401 titled on the law of aiding and abetting. And just to assist you beyond that – and, believe me, I have to be very cautious in not interjecting anything about what I think to be the facts of the case. That's for you to decide. I'm here just simply to clarify perhaps what aiding and abetting liability is. And that is if a person takes it upon him or herself to help facilitate the objective by the actual perpetrator in the crime, then that person can be an aider and abettor and just as liable as though he or she was the actual perpetrator. So again, instruction 400 and 401 will answer the question that you have with respect to your findings about the facts of the case as to whether or not you find Mr. Proctor to be either a buyer or seller or some type of agent or intermediary. And, again, take a look at those instructions, and it will answer the question that you have.

"Inquiry No. 2: Does it matter in count 1 who approached who to start the transaction?

11

"Well, all I can tell you is that is up for you – that is for you to decide the significance of that fact if, in fact, that is what you have found. And I can't really answer the question as to how to utilize that information in terms of the issues. But it can matter, or it cannot matter. It depends on you and the weight you want to give to that fact if, in fact, that is what you have found. So I apologize for not going beyond that, but to do so would invade the province of the jury which I'm not permitted to do.

"Inquiry No. 3: Is there a distinct/separate legal charge that differentiates buying versus selling, or does count 1 apply to both buy and sell?

"Well, the first part of that question is asking the court whether there is a distinct/separate legal charge that differentiates between a buying and a selling. The legal answer is yes. But you must focus on the crimes that have been charged in this case, not whether or not another charge, a different charge, could have been supported by the evidence. Your sole responsibility is to determine whether or not the defendant as charged is guilty of the offense. So that kind of answers the first part of that third inquiry.

"But the second part of the inquiry says, 'Does count 1 apply to both buy and sell?' Well, that kind of relates to your first inquiry. It may or may not be the case. It depends on whether or not you can find that there is aiding and abetting liability. And if so, a buyer can be just as guilty as a seller if, in fact, the law of aiding and abetting has been met. A delivery person who is neither a buyer or seller could still be an aider and abettor if in fact the law of aiding and abetting has been met. And, again, that requires those elements. So you have got to look at those elements to see if the evidence supports them, and if it does, you deal with it. If not, you deal with it.

12

"So that's the best I can do without, again, invading the province of the jury which I cannot and certainly will not do."

The purported defect in the court's response, according to defendant, was not elaborating on the point that an equal copartner in a group purchase of narcotics for personal use is not guilty of aiding and abetting the seller. The problem with the contention, as we have already discussed, is that no evidence whatsoever supported an instruction on that principle. Under Officer Cardenas' version, defendant was a go-between who was paid from a piece of the rock he obtained for the officers. Under defendant's version, no sale of cocaine occurred at all. Thus, had the court elaborated on the point, it would have been instructing the jury on a principle of law inapplicable to the case. We thus find no abuse of discretion in the court's response. (See *People v. Davis* (1995) 10 Cal.4th 463, 522 ["Where, as here, 'the original instructions are themselves full and complete, the court has discretion under [Penal Code] section 1138 to determine what additional explanations are sufficient to satisfy the jury's request for information'"; no error in referring jury to instruction already given].)

IV.    *Pitchess Motion*

Defendant contends that the trial court erred in limiting its in camera review of *Pitchess* materials to allegations of conduct involving entrapment, and should have included complaints of dishonesty and filing false police reports. We disagree.

As relevant to defendant's *Pitchess* motion, Officer Cardenas wrote in his police report that the incident began when he and his partner Officer Torres drove into the gas station, defendant came over to them, and defendant asked what they needed. In his preliminary hearing testimony (but not in his report), Officer

13

Cardenas testified that he told defendant that he needed a rock because his back hurt.

In support of defendant's motion for *Pitchess* discovery, defense counsel alleged, on information and belief, "that the two officers engaged in conversation and tactics with the defendant amounting to entrapment. The officers lured and persuaded the defendant into obtaining narcotics for them by appealing to the sympathy of the defendant by both claiming [one] officer had an injured back. [¶] The officers also falsely claim that it was defendant who contacted them first when in reality it was the officers who initiated contact with the defendant." On this basis, defendant sought to discover complaints concerning Officer Cardenas and Officer Torres, "for officer misconduct amounting to moral turpitude . . . , including but not limited to allegations of entrapment, harassment, fabrication of probable cause, making false arrests, writing false police reports, giving false testimony, and any other complaints of fabrication."

In ruling, the trial court stated: "It's apparent from the affidavit in support of the motion that the defense is contemplating a defense of entrapment. . . . [T]he defense's allegation as to who approached whom appears to be . . . less probative in terms of what transpired. The court is going to order an in camera review of any allegations involving Officer[s] Cardenas and Torres as far as any complaints involving conduct that may amount to an entrapment procedure. The court is not going beyond that particular area." The court conducted an in camera hearing and no complaints were ordered disclosed.

We find no abuse of discretion in the trial court's failing to broaden the in camera hearing to include complaints of dishonesty and filing false police reports. A showing of good cause for *Pitchess* discovery "requires a defendant . . . to establish not only a logical link between the defense proposed and the pending

14

charge, but also to articulate how the discovery being sought would support such a defense or how it would impeach the officer's version of events." (*Warrick v. Superior Court* (2005) 35 Cal.4th 1011, 1021.) The information which the defendant seeks must be described with some specificity to ensure that the request is "limited to instances of officer misconduct related to the misconduct asserted by the defendant." (*Ibid.*) Moreover, the affidavit must "describe a factual scenario supporting the claimed officer misconduct. That factual scenario, depending on the circumstances of the case, may consist of a denial of the facts asserted in the police report." (*Id.* at pp. 1024-1025.) However, the factual scenario must be a "plausible scenario of officer misconduct," a scenario that "might or could have occurred. Such a scenario is plausible because it presents an assertion of specific police misconduct that is both internally consistent and supports the defense proposed to the charges." (*Id.* at p. 1026.)

Here, although the trial court granted an in camera review of complaints relating to entrapment, we note that defense counsel's affidavit was insufficient to justify that examination, because it failed to set forth a plausible factual scenario of officer misconduct in the form of entrapment. The only facts alleged (as opposed to the conclusions that the officers "engaged in conversation and tactics with the defendant amounting to entrapment" and "lured and persuaded the defendant into obtaining narcotics") were that the officers approached defendant (rather than defendant approaching the officers) and that the officers claimed one of them had a bad back. But these facts do not make a prima facie showing of officer misconduct amounting to entrapment. To make such a showing, defendant was required to allege facts sufficient to suggest that the officers' conduct was "likely to induce a normally law-abiding person to" participate in an illegal purchase of cocaine. (*People v. Barraza* (1979) 23 Cal.3d 675, 689.) Under this standard, alleging that

15

the officers might have approached defendant, explained that one had a bad back, and asked defendant to arrange a purchase of cocaine is insufficient to establish a plausible factual scenario suggesting that the officers' conduct would have induced a law abiding person to arrange an illegal purchase of narcotics. Thus, defendant was not entitled to a review of police personnel records regarding complaints of entrapment, because there was no plausible factual showing of officer misconduct. Because defendant was not entitled to the in camera review that the trial court provided, there was no abuse of discretion in failing to conduct an even broader in camera review to include allegations of dishonesty and filing false police reports.

Defendant contends that the allegation that Officer Cardenas falsely wrote that defendant approached the officers (as opposed to the other way around) justified an examination of complaints involving dishonesty and filing false police reports. However, other than alleging that the officers approached him first, defendant offered no facts to dispute Officer Cardenas' version of events. Indeed, he did not dispute that he aided and abetted a sale of narcotics to the officers. Rather, he sought discovery on the basis that the officers engaged in entrapment -- though, as we have explained, he made an insufficient showing to justify discovery on that ground. Thus, in the context of defendant's motion, the fact that Officer Cardenas might have misstated who first approached whom was not material to disputing Officer Cardenas' version of events resulting in the charged sale of cocaine, and did not justify an examination of complaints concerning dishonesty and filing false police reports.[2]

_____

[2]     We have reviewed the record of the in camera hearing. Assuming for the sake of argument that defendant was entitled to an in camera review of complaints regarding entrapment, we find no abuse of discretion in the court's handling of the in camera review.

**DISPOSITION**

The judgment is affirmed.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**


WILLHITE, Acting P.J.


We concur:



MANELLA, J.



COLLINS, J.