[No. B014481. Second Dist., Div. Five. July 15, 1986.]

THE PEOPLE, Plaintiff and Respondent, v.
JOHN TERRANCE SONLEITNER, Defendant and Appellant.

## COUNSEL

Barbara E. Roberts, under appointment by the Court of Appeal, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Mark Alan Hart and Donald E. De Nicola, Deputy Attorneys General, for Plaintiff and Respondent.

---

OPINION

**ASHBY, Acting P. J.**—By jury trial appellant John Sonleitner was convicted of possession of cocaine (Health & Saf. Code, § 11350) and was granted probation with one year in the county jail.

Originally appellant was charged in three counts. He was charged jointly with codefendant Patrick Smith in counts I and II with furnishing, selling or offering to sell cocaine. (Health & Saf. Code, § 11352.) In count III appellant alone was charged with possession of cocaine for purposes of sale. (Health & Saf. Code, § 11351.) He was convicted of simple possession of cocaine, as a lesser included offense of count III.[1] In order to discuss the contentions raised on appeal, however, we must summarize the evidence concerning all three charges.

Codefendant Patrick Smith was suspected of selling cocaine in the Lancaster area. In a cooperative investigation by the Los Angeles County Sheriff and the Los Angeles City Police Department, an informant, Glen Mabson, who was acquainted with Smith, went to Lancaster with Los Angeles Police Officer Robert Felix, who was posing in an undercover capacity as a buyer of cocaine. Mabson had previously told Smith that he knew a man who wanted to purchase cocaine. Mabson and Officer Felix met Smith at Smith's place of employment, a towing service at 10th and I Streets in Lancaster on August 19, 1982. Mabson told Smith that Felix was the man who wanted to purchase some cocaine. Smith told them to go to the nearby Essex House hotel, to check into a room and to wait for him to meet them there.

Shortly thereafter Smith came to the hotel room. Officer Felix showed Smith $11,000 and said he wanted to buy five ounces of cocaine. Smith said that would be no problem. Officer Felix said, however, that first he wanted a sample of the product, and he paid Smith $300 for a one-eighth ounce sample. Smith said he would go to his connection and get the sample and bring it back to the hotel within a short time.

When Smith left the hotel for this purpose he was surveilled by other officers. He was followed seven or eight miles west of Lancaster where he

---

[1]Although codefendant Smith was found guilty on counts I and II, appellant was acquitted on count I and the jury was unable to reach a verdict as to appellant on count II.

entered a residence on L-10 Avenue in the Quartz Hill area (the Quartz Hill residence). Smith remained at that residence five to ten minutes, then drove back to the Essex House hotel, having made no other stops. Other evidence connected appellant John Sonleitner to the Quartz Hill residence. Appellant had a key to that residence; he had clothing and other property in a bedroom; there were photos of appellant at the residence; and three phone calls for appellant were received at that residence that afternoon.

Smith returned to the hotel room and handed Officer Felix a paper bindle, exhibit IA, which contained a little more than a gram of cocaine, telling Officer Felix that it was "a sample from the package."[2] Officer Felix examined it, said it looked good and that he would like to buy five ounces.

Smith wanted to be given the $11,000 and to return with the cocaine. This was unacceptable to Officer Felix, so they agreed to go together to meet Smith's connection. Smith and Officer Felix left the hotel in Felix's undercover vehicle and drove in the direction of the Quartz Hill residence. Before getting that far, however, Smith said he had to stop at a phone booth and call his connection. They stopped at a 7-Eleven store on L Avenue and Smith made a call from a phone booth. Smith then told Officer Felix that his connection was just a short distance away but did not want to meet Felix. Instead they agreed that Officer Felix would wait at the hotel and Smith would bring the cocaine.

After Officer Felix and Smith returned to the hotel, Smith left in his own vehicle to get the cocaine. Smith was under surveillance and was observed to go south to a residence on Cedar Street (the Cedar Street residence, where appellant was subsequently arrested). Smith entered the residence. Ten to fifteen minutes later appellant John Sonleitner and Alice Gwin arrived at the Cedar Street residence and entered. Five minutes later Smith left the Cedar Street residence and went back to the Essex House hotel.

Smith entered the hotel room and handed Officer Felix a plastic baggie containing approximately two and a half ounces of cocaine. Smith said that his connection would allow him to deliver only one-half of the product at a time. Smith said that Felix was to pay him $5,000 for the two and a half ounces,[3] then he would go back to his connection, a short distance away, and get the other two and a half ounces. At that point Smith was arrested.

Having probable cause to believe that an additional two and a half ounces of cocaine would be found at the location from which Smith had just come,

[2]This sample was the basis for the charge in count I.

[3]This sample was the basis for the charge in count II.

sheriffs and police officers converged on the Cedar Street residence in black-and-white vehicles as well as undercover cars, and wearing their official raid jackets.

Alice Gwin was on the front porch when the officers arrived. She jumped up, yelling, "The sheriffs are coming." As the officers ran to the front door, they observed, through the windows, appellant running across the living room.

As Sergeant Wachsmuth entered the front door, he saw that appellant was passing from the living room to the bathroom. Sergeant Wachsmuth followed appellant into the bathroom. In his hand appellant had a two-ounce plastic bottle (People's exhibit 4) labeled Inositol. Appellant poured the entire contents of the bottle, a white crystalline powder resembling cocaine, into the toilet.[4]

In his 10 years' experience as a narcotics officer, Sergeant Wachsmuth had seen cocaine thousands of times. Cocaine is white and crystalline. Inositol is off-white or dull white and is not crystalline. Inositol is an inert ingredient commonly used for cutting cocaine. Sergeant Wachsmuth testified, "[A]nyone that has been in the business, either from my end or the other end can tell the difference between a cutting agent and cocaine."

Appellant flushed the toilet and threw the bottle in also. By the time Sergeant Wachsmuth could remove appellant from the bathroom, the toilet water was already spiraling and emptying with the powder in it. Sergeant Wachsmuth attempted to prevent the water going down by kicking the toilet so as to dismantle it from the floor, shattering the porcelain and cutting tendons in his wrist. The bottle was recovered from the bathroom floor, but, cocaine being water soluble, no powder was recovered from the toilet water nor was any residue found on the bottle.

No other cocaine was found at the Cedar Street residence.[5]

Appellant testified in his own defense, claiming that the police officers were lying and that he never held or emptied a bottle into the toilet. He claimed he had been innocently watching television at the residence, the home of Fred Rosenberg, and that he had just finished urinating and flushing the toilet when the officers broke into the house. This claim was contradicted by the testimony of the two officers who saw appellant running across the living room, by the testimony of Sergeant Wachsmuth who observed ap-

---

[4]This sample was the basis for the charge in count III.

[5]Approximately one gram of cocaine was found at the Quartz Hill residence.

pellant emptying the contents of the bottle into the toilet, which did not contain urine, and by the recovery of the bottle.[6]

## DISCUSSION

Appellant contends (1) that the evidence is insufficient to show that the substance appellant flushed down the toilet was cocaine and (2) that the court erred in failing to instruct the jury sua sponte that appellant was not guilty of unlawful possession if he handled the cocaine only momentarily for the purpose of disposing of it. Neither contention has merit.

The count on which appellant was convicted involved the substance appellant successfully flushed down the toilet. The prosecution was unable to subject it to chemical analysis. ■ However, the nature of a substance, like any other fact in a criminal case, may be proved by circumstantial evidence. (*People* v. *Tipton* (1954) 124 Cal.App.2d 213, 216-217 [268 P.2d 196]; *People* v. *Ihm* (1966) 247 Cal.App.2d 388, 392 [55 Cal.Rptr. 599].) It may be proved, for example, by evidence that the substance was a part of a larger quantity which was chemically analyzed (*People* v. *Ihm, supra; People* v. *Francis* (1969) 71 Cal.2d 66, 72 [75 Cal.Rptr. 199, 450 P.2d 591]; *People* v. *Stump* (1971) 14 Cal.App.3d 440, 443-444 [92 Cal.Rptr. 270]), by the expert opinion of the arresting officer (*People* v. *Marinos* (1968) 260 Cal.App.2d 735, 738-739 [67 Cal.Rptr. 452]), and by the conduct of the defendant indicating consciousness of guilt. (*People* v. *Patterson* (1959) 169 Cal.App.2d 179, 186 [337 P.2d 163].)

■ Here codefendant Smith went to meet his connection at the Cedar Street house and returned to the hotel and delivered a plastic baggie subsequently analyzed to contain approximately two and a half ounces of cocaine, stating that he was delivering half of the agreed-upon five ounces and would be going back for the other half. The bottle which appellant emptied into the toilet at the Cedar Street residence contained two ounces and no other cocaine was found there. The evidence strongly indicates the substance destroyed by appellant was the other half of the cocaine partially delivered by codefendant Smith. (See *People* v. *Ihm, supra,* 247 Cal.App.2d 388, 392; *People* v. *Stump, supra,* 14 Cal.App.3d 440, 443-444.) The only reasonable inference from appellant's conduct in running across the living room and flushing the powder down the toilet at the sound of his companion's yell that "[t]he sheriffs are coming," is that the substance was unlawful, since there would be no need to destroy a substance which was lawful to possess. (See *People* v. *Patterson, supra,* 169 Cal.App.2d 179, 186.)

---

[6]Codefendant Smith presented an entrapment defense.

Sergeant Wachsmuth had seen cocaine thousands of times in his 10 years' experience as a narcotics officer, and he testified that he could observe the white crystalline character of the substance, resembling cocaine, as appellant was pouring it from the bottle. He said, "[A]nyone that has been in the business, either from my end or the other end can tell the difference between a cutting agent and cocaine." (See *People* v. *Marinos, supra,* 260 Cal.App.2d 735, 738-739.) Appellant contends "that whether or not a powder or substance is a narcotic cannot be determined by a mere inspection of its outward appearance." However, this statement was made in a case where the authorities had *recovered* substantial quantities of the material but neglected to introduce any testimony at trial by any qualified expert. (*Cook* v. *United States* (9th Cir. 1966) 362 F.2d 548, 549 & fn. 1.) Here, on the other hand, the prosecution carefully set forth several types of circumstantial evidence to prove the character of the powder, and "[w]hen all these facts are considered, they 'justify the inference of guilt' [citation] drawn by the jury." (*People* v. *Patterson, supra,* 169 Cal.App.2d at p. 186.)

Next, citing *People* v. *Mijares* (1971) 6 Cal.3d 415 [99 Cal.Rptr. 139, 491 P.2d 1115], appellant argues that the court should have instructed the jury, sua sponte, "that for possession to be unlawful, it must be knowing and not merely transitory or for the sole purpose of abandoning or destroying the substance." █ *Mijares* has no application to the instant case. In *Mijares* the defendant testified that his friend lost consciousness in a car, that defendant believed his friend was overdosing from drugs, and that defendant found a narcotics outfit in his friend's pocket and threw it out of the car before driving to the fire station for emergency medical aid. (*Id.,* 6 Cal.3d at pp. 418-419.) The Supreme Court held that if the defendant's testimony had been believed, the possession was innocent or guileless (*id.,* at p. 422), and that the trial court should have instructed the jury on its own motion "in the special circumstances now before us." (*Id.,* at p. 423.) The court "emphasize[d] that our decision in no way insulates from prosecution under the narcotics laws those individuals who, fearing they are about to be apprehended, remove contraband from their immediate possession. [Citations.] We leave intact the rule that from such conduct 'it could be inferred that defendant at one time exercised physical dominion' over the narcotic." (*Id.,* at p. 422.)

Here appellant presented no defense which would support a claim his handling of the cocaine was innocent. (See *People* v. *Rand* (1972) 23 Cal.App.3d 579, 584 [100 Cal.Rptr. 473].) In running to the bathroom at the approach of the sheriffs, his purpose was obviously the destruction of evidence, which *Mijares* emphasizes is not within its rationale.

Furthermore, appellant's defense was to deny that there was a bottle of powder or that he emptied any powder into the toilet at all. A court should

not give instructions, sua sponte, on a particular defense where those instructions would be inconsistent with the defendant's actual theory of the case. (*People* v. *Sedeno* (1974) 10 Cal.3d 703, 716 [112 Cal.Rptr. 1, 518 P.2d 913].) Here the instruction now advocated for the first time on appeal would have been inconsistent with appellant's actual claim at trial that he did not handle any substance at all.

The judgment (order granting probation) is affirmed.

Hastings, J., and Eagleson, J., concurred.

Appellant's petition for review by the Supreme Court was denied October 23, 1986. Bird, C. J., was of the opinion that the petition should be granted.