The PEOPLE of the State of Colorado, Plaintiff–Appellee,

v.

Thomas BARRY, Defendant–Appellant.

No. 91CA1490.

Colorado Court of Appeals, Div. I.

June 16, 1994.

Rehearing Denied July 14, 1994.

Certiorari Denied Jan. 30, 1995.

and § 24–51–1105, C.R.S. (1993 Cum.Supp.).

**328**

Gale A. Norton, Atty. Gen., Stephen K. ErkenBrack, Chief Deputy Atty. Gen., Timothy M. Tymkovich, Sol. Gen., A. William Bonner, Asst. Atty. Gen., Denver, for plaintiff-appellee.

David F. Vela, State Public Defender, Martin Gerra, Deputy State Public Defender, Denver, for defendant-appellant.

Opinion by Chief Judge STERNBERG.

The defendant, Thomas Barry, appeals the judgment entered on a jury verdict finding him guilty of possession of a controlled substance. On appeal, he argues that his warrantless arrest was illegal, the evidence was insufficient to support the conviction, and the trial court's answer to a jury question was erroneous. We affirm.

Suspecting that a person named Rounds was dealing in drugs, the police used an informant to arrange a drug purchase from him and provided the informant with money for the purchase. The police followed Rounds, but lost him. They did, however, see him return and enter his house a short time later. Rounds then phoned the informant, who drove to Rounds' residence. Rounds came out of his home, walked to the informant's vehicle and handed him the cocaine, whereupon he was arrested.

At the time of the arrest, the police believed that Rounds lived alone. However, as they converged on the scene to complete the arrest, one of the officers noticed defendant looking out the glass front door of the residence. According to this officer, upon being seen by the officer, defendant "took an affirmative mode to try to conceal himself and try to get away from the window" by closing the window curtains. The officer immediately ran into the house where he observed defen-

dant coming out of a bathroom. As he searched defendant, the officer heard the sound of a flushing toilet, ran into the bathroom, and retrieved a plastic baggie just before it would have been flushed down the toilet. The baggie contained cocaine.

Defendant admitted that he lived in the house, but denied any involvement in dealing cocaine or that the cocaine found in the baggie was his.

## I.

Noting that the entry into the home was made without a warrant, the defendant asserts that the police had no probable cause to believe contraband was in the house, or, in the alternative, that even if they did have such probable cause, nevertheless, there was no exigency that would excuse their failure to obtain a warrant. We find no error.

■ Warrantless searches are *per se* unreasonable unless they fall within one of the narrow exceptions to the warrant requirement. *People v. Cleburn*, 782 P.2d 784 (Colo.1989). One of these, the exigent circumstances exception, justifies a warrantless search and seizure when the prosecution establishes both: (1) the existence of probable cause to search, and (2) circumstances requiring immediate police action. *People v. Garcia*, 752 P.2d 570 (Colo.1988). Exigent circumstances allow immediate, warrantless searches and seizures when it reasonably appears that evidence may be removed or destroyed by a third person before it can be secured by the police. *People v. Barndt*, 199 Colo. 51, 604 P.2d 1173 (1980).

■ Here, when the police saw defendant looking out the front door of the house, they realized that a third party was in the house. When defendant "tried to conceal himself and tried to get away from the window" by closing the curtains, the police had reasonable grounds to believe that this person might destroy possible evidence inside the house or harm the officers outside. *Cf. People v. Barndt, supra* (no exigent circumstances to search house when the facts did *not* substantiate a fear on the part of police of the presence of third persons inside the house).

However, because Rounds was arrested in the street outside the residence, defendant argues that the police had no reason to believe cocaine was located in the house. We do not agree. Shortly after Rounds took the informant's money and left the house, he returned and went back into the house. The police knew that Rounds had cocaine when he returned to the house and before the sale; thus, it was reasonable to believe both that some cocaine might still be in the house following the sale and that defendant was about to remove or destroy it.

■ Furthermore, in drug transactions, as testified to by two of the police officers, the possibility of violence involving armed drug dealers exists. Thus, a protective sweep and search for weapons provides an additional justification for the warrantless search. *See People v. Martinez*, 801 P.2d 542 (Colo.1990); *People v. Burley*, 185 Colo. 224, 523 P.2d 981 (1974); *but see People v. Santisteven*, 693 P.2d 1008 (Colo.App.1984).

## II.

The defendant next contends that the evidence was insufficient to support the conviction. He notes that the case against him was predicated entirely on the notion that he "possessed" the cocaine by picking it up and attempting to flush it down the toilet. Therefore, he argues that because his possession was "temporary or passing and for the purpose of disposal" the conviction cannot stand. Again, we disagree.

### A.

■ The elements of the crime of possession of a controlled substance are:

1. That the defendant
2. in the State of Colorado, at or about the date and place charged,
3. knowingly,
4. possessed,
5. the controlled substance, Cocaine.

Section 18–18–105(1)(a), C.R.S. (1986 Repl. Vol. 8B). *See also COLJI–Crim.* No. 36:02 (1983) and No. 36(11) (1993 Supp.).

The statute is clear and unambiguous; thus, "judicial scrutiny is complete." *State Department of Highways v. Mountain States Telephone & Telegraph Co.,* 869 P.2d 1289 (Colo.1994). Literal application of the statute to the acts of the defendant here does not create an absurd result. Thus, we may not rewrite the statute. Defendant's argument that it is unfair to apply the statute to one who has temporary or fleeting possession for the purpose of disposing of contraband is better addressed to the General Assembly.

The General Assembly has chosen to make drug possession a crime requiring only a general intent: if one knowingly possesses the substance, he has violated the statute. That is what occurred here. To adopt defendant's argument would be to make possession a specific intent crime, contrary to the plain language of the statute.

## B.

Section 2–4–201, C.R.S. (1980 Repl. Vol. 1B) directs us to avoid reaching an absurd result in interpreting a statute; rather, we should attempt to divine the intention of the General Assembly. There is no reason to view this defendant's conduct as innocent in nature. As he looked out the window, he saw his friend being arrested for selling cocaine. First, he attempted to conceal himself, and then he tried to dispose of the contraband. We see nothing "absurd" or unjust about convicting defendant under these facts. It is not for us to say that the General Assembly, by the plain language used in this statute, did not mean to criminalize the conduct of the defendant.

## C.

 The defendant, nevertheless, refers us to the case of *People v. Mijares,* 6 Cal.3d 415, 99 Cal.Rptr. 139, 491 P.2d 1115 (1971), and its progeny. In California and Alaska, judicial scrutiny of the "possession" element of statutes similar to ours is permitted to determine whether transitory handling of the drug for the purpose of destroying it constitutes possession. *Mijares* and its progeny hold that, in some circumstances, a jury should be instructed that "passing control" of drugs for purposes of disposal does not

amount to possession. Those courts refuse to interpret their possession statutes to apply to such "guileless circumstances."

That being said, however, even the courts that follow the *Mijares* rule make clear that they are not creating a loophole for persons, such as this defendant, who discard contraband when they are about to be arrested, or for persons who destroy or conceal evidence. In such cases, the prior physical dominion over the narcotic is sufficient for conviction. The cases repeatedly emphasize:

> [O]ur decision in no way insulates from prosecution *under the narcotics laws* those individuals who, fearing they are about to be apprehended, remove contraband from their immediate possession [citations omitted] ... We leave intact the rule that from such conduct 'it could be inferred that defendant at one time exercised physical dominion' over the narcotics [cite omitted].

*People v. Mijares, supra,* 6 Cal.3d at 422, 99 Cal.Rptr. at 144, 491 P.2d at 1120 (emphasis added). *See also People v. Wesley,* 224 Cal. App.3d 1130, 274 Cal.Rptr. 326 (1990); *People v. Sonleitner,* 183 Cal.App.3d 364, 228 Cal.Rptr. 96 (1986); *People v. Hampton,* 115 Cal.App.3d 515, 171 Cal.Rptr. 312 (1981); *Hack v. United States,* 445 A.2d 634 (D.C.App.1982).

Also, California Jury Instructions, Criminal (5th ed. 1984) (pocket part § 12.06) states that transitory possession of a controlled substance may not be unlawful. However, that defense exists only if: "control is not exercised over the [controlled substance] for the purpose of preventing its imminent seizure by law enforcement." *Compare People v. Cole,* 202 Cal.App.3d 1439, 249 Cal.Rptr. 601 (1988), *with People v. Sullivan,* 215 Cal. App.3d 1446, 264 Cal.Rptr. 284 (1989).

Thus, even if we were to be persuaded that we should adopt a rule that "transitory" handling of a drug may not constitute "possession," that rule would provide no defense to defendant in this case. The above quotation from *People v. Mijares, supra,* emphasizes the fact that the transitory handling exception would not be applicable to one such as this defendant. In *People v. Sonleitner, supra,* the court ruled that the "passing con-

trol" instruction of *Mijares, supra,* was inapplicable in a case in which the defendant had flushed an alleged narcotic down the toilet when police raided a residence. In so holding, the court stated:

> In running to the bathroom at the approach of the sheriffs, defendant's purpose was obviously the destruction of evidence, which *Mijares* emphasizes is not within its rationale.

*People v. Sonleitner, supra,* 183 Cal.App.3d at 370, 228 Cal.Rptr. at 100.

### III.

■ Contrary to the defendant's final contention of error, the trial court's answer to the jury's question does not constitute error.

During its deliberations, the jury submitted the following question to the court:

> [D]oes knowingly destroying the evidence, by physically picking up the cocaine and flushing it down the toilet, constitute 'possession'...?

The court gave this answer:

> [I]f you find that the defendant picked up the cocaine and flushed it down the toilet, then the court directs your attention to Instruction 6 which reads 'possession as used in these instructions ... does mean the actual physical possession, or immediate or knowing control [over] the object or the thing allegedly possessed.'

We conclude that this answer was correct. *See Leonardo v. People,* 728 P.2d 1252 (Colo. 1986).

ABA, *Standards for Criminal Justice,* Standard 15–4.3(a) (2d ed. 1980), states:

> If the jury, after retiring for deliberation desires to be informed on any point of law, they shall be conducted to the courtroom. The court shall give appropriate additional instructions in response to the jury's request unless:
>
> (i) the jury may be adequately informed by directing their intention to some portion of the original instruction;
>
> (ii) the request concerns matters not in evidence or questions which do not pertain to the law of the case; or

> (iii) the request calls upon the judge to express an opinion upon factual matters that the jury should determine.

None of the prohibitions of the standard applies here. The jurors would not have been helped simply by being referred back to the same instruction that confused them, and their request related to matters relevant to the case. With respect to the third exception, the court avoided the inference that it was expressing an opinion upon factual matters by prefacing its response with the phrase, "if you find." The substantive issue implicated by the jury's question, whether temporary possession was sufficient to constitute possession under the law, has been analyzed in Part II of this opinion.

The judgment is affirmed.

KAPELKE, J., concurs.

BRIGGS, J., dissents.

Judge BRIGGS dissenting.

The majority today adopts a literal interpretation of the crime of possession of a controlled substance that results in absurd consequences and has been rejected by all other courts addressing the issue. Recognizing the need for an exception to a literal interpretation, the majority seeks to avoid the reversal of defendant's conviction that would necessarily result by alluding to a possible exception to the exception. Because the majority's exception to the exception fails to comport with our citizens' constitutional rights to due process and equal protection and because, in my view, no other basis exists for affirming defendant's conviction, I respectfully dissent.

### I.

The majority at the outset observes that even the courts recognizing the need for an exception to a literal interpretation of "possession" make clear that they are not creating a loophole for persons who discard contraband when they are about to be arrested. I agree that no exception to a literal interpretation of § 18–18–105(1)(a), C.R.S. (Repl. Vol. 8B) should insulate from prosecution for possession those individuals who, having pos-

session of a substance they know is a controlled substance and fearing they are about to be apprehended by the police, remove the controlled substance from their immediate possession. In those situations, it may properly be inferred that the defendant knowingly possessed the controlled substance prior to the act of disposal or abandonment. *See People v. Mijares,* 6 Cal.3d 415, 99 Cal.Rptr. 139, 491 P.2d 1115 (1971). The jury can be so instructed. *See Adams v. State,* 706 P.2d 1183 (Alaska Ct.App.1985).

The problem with the majority's observation is the additional statement that the defendant in this case was attempting to discard contraband to avoid his own arrest. No such evidence is in the case before us nor, in light of the prosecution's theory of the case, could any such inference have been drawn from the evidence presented.

Defendant admitted that he lived in the house, but denied any involvement in dealing cocaine or that the cocaine found in the baggie was his. The defendant was not charged with any criminal offense related to the sale of cocaine that had occurred in front of the house, nor was he charged with obstruction of justice or conspiracy. Instead, he was charged only with unlawful possession of a controlled substance.

Prior to trial, in response to a bill of particulars, the prosecutor had stipulated that the defendant was not being charged with having possessed the cocaine which his roommate delivered to the confidential informant or with being a complicitor in the sale or distribution of that cocaine. And, at trial, the prosecution's sole theory of the case was that the individual arrested in front of the house had reserved, for himself, some of the cocaine he was to deliver and left it in the house in a plastic baggie. Defendant, upon looking out the front window and seeing his friend being arrested, grabbed the baggie his friend had left in the house and attempted to flush it down the toilet.

Apart from the brief possession necessarily involved in the act of disposing of the cocaine, no evidence or inference of possession was presented or argued. In particular, there was no suggestion that the jury could infer from his actions that the cocaine had

been owned or controlled by the defendant before he attempted to flush it down the toilet. The prosecutor in closing instead argued that it was irrelevant whether the cocaine belonged to defendant or why he had attempted to destroy it, and repeatedly stressed that defendant was guilty of criminal possession based solely upon his actual physical possession of the cocaine from the time he picked up the baggie to the time he deposited it in the flushing toilet.

While deliberating, the jury submitted the following question to the court:

Does knowingly destroying the evidence, by physically picking up the cocaine and flushing it down the toilet, constitute 'possession' as referred to in Instruction 6?

Over defendant's objection the court gave the following answer to the jurors' question:

If you find that the defendant picked up the cocaine and flushed it down the toilet, then the court directs your attention to Instruction 6 which reads 'possession as used in these instructions ... does mean the actual physical possession, or immediate or knowing control [over] the object or thing allegedly possessed.'

The prosecution on appeal, as at trial, does not contend that a jury could reasonably infer from the evidence presented that defendant ever possessed the cocaine in an attempt to avoid his own arrest. The only contention presented to us is that defendant's momentary physical possession during the attempt to flush his friend's cocaine down the toilet was sufficient to sustain defendant's own conviction for possession. Thus, our analysis must focus on whether a person is guilty of possession if he or she picks up a controlled substance for the sole purpose of immediately destroying or discarding it.

## II.

Section 18–18–105(1)(a) proscribes the possession of a controlled substance, and the jury was properly instructed that the elements of this crime are:

1. That the defendant,

2. in the State of Colorado, at or about the date and place charged,

3. knowingly,

4. possessed,

5. the controlled substance, Cocaine.

*See also COLJI–Crim.* No. 36:02 (1983).

The full definition of "possession" given to the jury is contained in *COLJI–Crim.* No. 36(11) (1993 Supp.):

'Possession' as used in these instructions, does not necessarily mean ownership, but does mean the actual physical possession, or the immediate and knowing dominion or control over the object or the thing allegedly possessed. Possession need not be exclusive, provided that each possessor, should there be more than one, actually knew of the presence of the object, or the thing possessed, and exercised actual physical control or immediate, knowing dominion or control over it.

This instruction is derived from definitions included or discussed in *Moore v. People,* 171 Colo. 338, 467 P.2d 50 (1970), *Mickens v. People,* 148 Colo. 237, 365 P.2d 679 (1961), and *People v. Dwire,* 624 P.2d 909 (Colo.App. 1980). However, none of these cases presented the question whether possession of a controlled substance for the sole purpose of its immediate destruction or disposal is sufficient to satisfy the requirements of § 18–18–105(1).

### A.

It is presumed that in enacting § 18–18–105(1), the General Assembly intended a just and reasonable result. Section 2–4–201, C.R.S. (1980 Repl. Vol. 1B). "Although statutory language should be given effect according to its plain and obvious meaning, ... when a literal interpretation creates an absurd result, the intention of the framers will prevail over this interpretation." *People v. Bowman,* 812 P.2d 725, 728 (Colo.App.1991).

If § 18–18–105(1) were construed to include as a drug offender anyone who possessed a controlled substance for the sole purpose of its immediate destruction or disposal, a parent discovering a child with cocaine and immediately destroying or otherwise disposing of it would be subject to the same felony conviction as one who possessed the drug for his or her own purposes; so

would a parent who immediately delivered the cocaine to the police, as well as a parent who immediately called the police and kept the cocaine away from the child while awaiting their arrival.

Whether the majority finds nothing absurd about defendant being convicted as a drug offender under the specific facts presented here is of no moment. *See Ingram v. Cooper,* 698 P.2d 1314 (Colo.1985) (supreme court noted hypothetical situations posited by expert at trial in which defendant's proposed interpretation would result in absurd consequences). It is precedent we are establishing. The statutory interpretation we provide will be applied by future juries in a myriad of factual situations.

A literal interpretation would, in any event, lead to a further anomalous result under the facts presented here. Section 18–8–105, C.R.S. (1993 Cum.Supp.) provides that a person is an accessory to a crime if, among other things, he or she conceals, destroys, or alters any physical evidence with the intent to hinder, delay, or prevent the discovery, detection, apprehension, prosecution, conviction, or punishment of the other for the commission of a crime. The crime of being an accessory is, not surprisingly, defined as a less serious grade of felony than the principal crime.

However, if § 18–18–105 is read literally, simple possession, the principal crime, will include the identical conduct for being an accessory to possession, but without the required specific intent. The principal crime will therefore be a lesser-included offense of being an accessory. Section § 18–1–408, C.R.S. (1986 Repl. Vol. 8B). Yet the lesser-included offense will invariably be a higher grade felony. While such a result may not violate any statutory or constitutional rule, it is "contrary to common sense." *See People v. Halstead,* 881 P.2d 401 (Colo.App.1994).

Further, a fundamental purpose of § 18–1–408, C.R.S. (1986 Repl Vol. 8B) is to provide a defendant the right to request an instruction on the lesser-included offense whenever there is a rational basis for the jury to acquit the defendant of the principal offense charged and convict the defendant of the

lesser offense. *See People v. Halstead, supra.* That right becomes illusory when the lesser-included offense, in this case the principal crime of possession, is invariably the more serious grade of felony.

Other courts have avoided these kinds of problems by relying on an analysis first articulated in *Garland v. State,* 165 Miss. 136, 146 So. 637 (1933). There, two deputy sheriffs obtained a search warrant and entered the home of a bootlegger. His wife grabbed a jug of homemade liquor, ran to the back door, and smashed the jug on the steps. She was then charged with and convicted of possession.

The court reversed the wife's conviction because there was no contention she had possessed the liquor before she picked up the jug, and her own possession "was for the sole purpose of putting an end to the unlawful possession of the liquor by her husband." *Garland v. State, supra,* 146 So. at 638. This presumably would not have prevented her prosecution and conviction as an accessory because of her destruction of evidence, but she was not charged with that crime.

Consistent with that analysis, every other court addressing the issue has concluded that criminal possession does not encompass mere momentary control for the purpose of destruction or disposal. *See United States v. Landry,* 257 F.2d 425 (7th Cir.1958); *Moreau v. State,* 588 P.2d 275 (Alaska 1978); *Jordan v. State,* 819 P.2d 39 (Alaska Ct.App. 1991); *People v. Mijares, supra; State v. Callahan,* 77 Wash.2d 27, 459 P.2d 400 (1969); *cf. People v. Broom,* 797 P.2d 754 (Colo.App.1990). To hold otherwise "would give the act of touching an unwarranted talismanic effect." *United States v. Santore,* 290 F.2d 51, 82 (2d Cir.1960), *cert. denied* 365 U.S. 834, 81 S.Ct. 749, 5 L.Ed.2d 744 (1961).

I would so hold in this case.

### B.

As the majority correctly notes, in *People v. Sonleitner,* 183 Cal.App.3d 364, 228 Cal. Rptr. 96 (1986), the California court of appeal found no error in the trial court's refusal to give a "passing control" instruction. However, this was because the instruction would have been contrary to defendant's theory of defense that he did not possess the cocaine even for a moment. *See Jordan v. State, supra,* at 43 (n. 3). Unlike the facts in this case, in *Sonleitner* there was evidence presented from which the jury could have concluded not just that defendant momentarily possessed the contraband, but that it in fact belonged to him.

Dictum in the *Sonleitner* opinion can be read as indicating that only possession which is "innocent or guileless" should be insulated from prosecution. However, such an exception to the exception for passing control does not provide to a jury an intelligible and rational basis for deciding guilt or innocence.

Initially, it is worth noting that the reference in dictum to "innocent or guileless" by the California Court of Appeals was derived in turn from dictum in its supreme court's decision in *People v. Mijares, supra.* In that case, the court appropriately rejected the contention that mere momentary physical possession should always be sufficient to sustain a conviction. Giving as an example someone who sees a package, picks it up, realizes it contains heroin, then places it back on the ground, the court concluded that the possession statutes should not be read to authorize convictions under such "guileless" circumstances.

However, the court in *Mijares* did not reverse the defendant's conviction on the basis that his possession was innocent or guileless. It instead reversed because an instruction defendant had requested should have been given:

> Defendant contends ... the jury should have been instructed that if it believed he did not himself use heroin on the day in question or handle it in furnishing narcotics ... but instead had no contact with the narcotic other than to remove it ... for the purpose of disposal, such handling is insufficient for conviction of the crime of possession.... We find this contention persuasive.

*People v. Mijares, supra,* 99 Cal.Rptr. at 141, 491 P.2d at 1117.

In support of this holding the California supreme court expressly relied on *State v.*

*Garland, supra,* and its rationale that the wife, in destroying the illegal liquor before it could be seized by the police, was not guilty of possession because her possession was only momentary for the sole purpose of putting an end to the illegal possession. This was in spite of the fact that she obviously was trying to destroy evidence of her husband's crime.

No doubt one of the reasons no other court has attempted to create an "exception to the exception" for conduct which is "innocent or guileless" is because such a standard would violate a defendant's due process right to instructions which are clear and understandable. *See Heller v. Lexton–Ancira Real Estate Fund, Ltd.,* 809 P.2d 1016, 1022 (Colo. App.1990) ("Jury instructions should be couched in language clearly understandable, rather than in unusual terms leading to guesswork and speculation on the part of jurors."), *rev'd on other grounds,* 826 P.2d 819 (Colo.1992). An instruction stating that defendant is not guilty if any possession was "innocent or guileless" provides no intelligible or rational basis for a jury to separate the guilty from the innocent, or to separate guilt as a principal from guilt as an accessory.

Any attempt to provide a definition for "innocent or guileless" would lead to more difficulties. First, it would be necessary to provide the jury with a definition of possession which excepted momentary possession for the purpose of destruction or disposal, then provide a further exception to limit the exception to conduct which was "innocent or guileless." This alone would test the requirement that jury instructions be clearly understandable.

More importantly, it would be impossible to define an exception to an exception without creating even worse difficulties. For example, an instruction that further defined "innocent or guileless" as "excluding the knowing destruction of evidence of a crime" would not provide a rational basis for separating the guilty from the innocent among those who possessed for the sole purpose of destruction, disposal, or abandonment. To know that the substance is an illegal drug is to know that it is evidence of a crime. The destruction of a substance known to be an illegal drug could therefore never be "innocent or guileless."

An attempt to define "innocent or guileless" expressly to exclude destruction of evidence with the intent to hinder or delay the investigation or prosecution of a crime violates other important statutory and constitutional principles. Defining the offense of possession under § 18–18–105 and the offense of being an accessory to such crime under § 18–8–105 so as to make the same conduct illegal is contrary to our obligation to construe these statutes in harmony and to give effect to each. *See Jones v. Westernaires, Inc.,* 876 P.2d 50 (Colo.App.1993). And, because of the lack of an intelligent standard for distinguishing conduct constituting the two offenses, such a construction runs afoul of the right to equal protection. *See People v. Jefferson,* 748 P.2d 1223, 1225–26 (Colo.1988) ("[S]eparate statutes proscribing with different penalties what ostensibly might be different acts, but offering no intelligent standard for distinguishing the proscribed conduct, run afoul of equal protection . . . .").

Finally, an attempt to define the exception to the exception to include those who come into possession of a controlled substance "inadvertently or unwittingly" leaves it unclear whether defendant's conduct here, or that of the parent who discovers a child with a controlled substance and immediately destroys or disposes of it, falls within the ambit of the statute. Further, while the majority apparently seeks to distinguish between the two, such a standard provides no intelligent basis for proscribing the former and immunizing the latter. In any event, such a definition would still fail to provide an intelligent standard for distinguishing the principal crime of possession from the separate crime of being as accessory when, as here, the defendant has attempted to destroy evidence of the principal crime.

In contrast, defining § 18–18–105 to exclude momentary possession for the purpose of destruction or disposal is consistent with legislative intent to define the principal crime separate from the crime of being an accessory. More specifically, it rationally distin-

guishes a felony conviction for possession from a felony conviction as an accessory to possession. And, it avoids absurd consequences while complying with the constitutional rights of our citizens.

If we are to claim the authority to decide cases on a basis independent of the democratic process, then we must accept the responsibility to decide cases only on a principled basis. This is all the more true in hard cases. *See generally,* R. Dworkin, *Hard Cases,* 88 Harv.L.Rev. (1975).

Because there was insufficient evidence to sustain defendant's conviction for possession, I would reverse and remand the cause for entry of a judgment of acquittal. *See United States v. Landry, supra.* I would therefore not address the more difficult question whether there was probable cause for the entry into defendant's residence that led to his arrest.