Filed 6/14/13  P. v. Jennings CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E055053 |
| v. | (Super.Ct.Nos. RIF151367 and RIF10003947) |
| DESTINY CAROLINE JENNINGS, | |
| Defendant and Appellant. | OPINION |

APPEAL from the Superior Court of Riverside County.  Harry A. Staley, Judge. (Retired judge of the Kern Super. Ct. assigned by the Chief Justice pursuant to art. VI, § 6 of the Cal. Const.)  Affirmed with directions.

Gail Ganaja, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Melissa Mandel and Marissa Bejarano, Deputy Attorneys General, for Plaintiff and Respondent.

1

Defendant and appellant Destiny Caroline Jennings was convicted by a jury of multiple drug-related charges, but this appeal challenges only her conviction of possession of a controlled substance, to wit, Xanax (alprazolam). (Health & Saf. Code, § 11375 [1] [see *infra*].) She argues that the evidence was insufficient to support her conviction because the criminalist who testified at trial did not conduct a chemical analysis of the seized pills and did not testify with certainty that the pills were Xanax. We disagree and affirm the judgment with directions.

STATEMENT OF FACTS

Due to the limited nature of appellant's challenge, no detailed recitation of the facts is necessary. Police entered appellant's residence in Riverside to serve a search warrant. Among the items found were 14 pills, which the officer serving the warrant believed to be a controlled substance, and one and one-half "bars," which he also believed to be the same controlled substance. Other substances were also seized that will be discussed below.

Testimony concerning the pills (the bar was not tested) was given by a criminalist employed by the Department of Justice. The witness testified that if a submitted substance appeared to be a pharmaceutical pill, the usual analysis would include only visual identification in connection with reference materials. For the pills in question, the criminalist compared the pills to samples shown in the "Drug ID Bible" and found a match for the pills' "markings" as tablets containing a preparation of alprazolam, or

_____

[1] All further statutory references are to the Health and Safety Code unless otherwise indicated.

2

Xanax. On cross-examination, she agreed that she did not have a "conclusive answer" for what the pills contained but that the pills in question were "similar" to those seen on the CD-ROM used. She also explained that the "visual identification [] could indicate to us what the tablet could contain."

DISCUSSION

Appellant argues that the criminalist backtracked on her initial more positive identification of the pills and that her subsequent testimony did, with respect to the *inconclusive* nature of her opinion, mean that there was not legally substantial evidence to support the conviction for possession of alpralozam. That is, that the criminalist's testimony was not reasonable, credible, and of solid value, such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt. (*Jackson v. Virginia* (1979) 443 U.S. 307, 313-324; *People v. Snow* (2003) 30 Cal.4th 43, 66.) We review the evidence in the light most favorable to the judgment. (*People v. Jones* (1990) 51 Cal.3d 294, 314.)

We may agree, arguendo, that the criminalist's testimony could have usefully been amplified; for example, if she had been asked to describe the identifying markings and size and shape of the pills, and asked expressly whether the sample in the reference was similarly sized, shaped, and marked. However, the criminalist certainly could base her opinion of the pills' composition on an established reference text or treatise (see Evid. Code, § 801, subd. (b)), and indeed there is no contention that the pills did *not* match the

3

reference's depiction of alprazolam; certainly there was no evidence to rebut the criminalist's testimony that they did. **2**

What appellant argues is that there was insufficient evidence that the pills actually contained alprazolam, even if they matched legitimately manufactured pharmaceutical products containing that substance, because they were not chemically analyzed. Chemical analysis of a substance is not always necessary to establish its nature or content, which may be shown circumstantially. (See *People v. Sonleitner* (1986) 183 Cal.App.3d 364, 369, and cases cited.) Of course, the criminalist could not testify positively that the pills contained alprazolam without a chemical analysis, and her testimony does no more than reflect this obvious point. But this does not mean that the pills' appearance does not constitute substantial evidence that they contained alprazolam.

Appellant suggests that the "visual resemblance did not rule out the possibility that the pills were counterfeit." She points to nothing in the record that might support such a suspicion, and the criminalist testified that all of the other submitted suspicious samples (approximately seven), which *were* chemically analyzed, *did* contain methamphetamine as suspected.**3** That is, the other seized substances which police believed were controlled

---

**2** In their respondent's brief, the People state that "[t]here was no contention that the pills [the criminalist] identified matched the markings for alprazolam pills, as identified in the *Drug ID Bible*." We believe that this apparent concession reflects an inadvertent misstatement; surely the People meant to say that there was no contention that the pills did *not* match.

**3** At trial, appellant urged that the evidence did not show that she possessed methamphetamine *for sale*. Very arguably the possession of counterfeit Xanax tablets would undercut this defense because it would suggest that appellant intended to pass off

*[footnote continued on next page]*

4

substances were, in fact, controlled substances, which corroborates the belief that pills that appeared to be industrially generated controlled substances of a specific type were, in fact, also what they appeared to be. If we may use the phrase *noscitur a sociis* in connection with drugs, it was very reasonable for the jury to conclude that apparently unlawful pills found in the company of definitely unlawful narcotics were also unlawful.

It is true that the *jury* was required to, and was instructed to, give appellant the benefit of any reasonable inference in her favor. (CALCRIM 224.) The jury evidently did not find it reasonable to believe that the pills were not what they appeared to be (and as noted in the footnote, the "counterfeit" theory was not directly presented to the jury). We agree with this apparent conclusion. And even if we were to find that the circumstances and evidence would have supported the contrary finding, where the jury acted reasonably—as we find it did—we could not reverse the judgment just because we might have reached another conclusion as triers of fact. (*People v. Ceja* (1993) 4 Cal.4th 1134, 1139.)

Appellant also argues, and the People concede, that she was improperly charged and convicted under section 11377, subdivision (a). Although subdivision (a) of that section on its face applies to possession of "Schedule IV" substances, which includes alprazolam (§ 11057, subd. (d)(1)), its application to alprazolam is effectively by section 11375. Subdivision (a) of the latter statute provides that "[a]s to the substances specified in subdivision (c), this section, and not Sections 11377, 11378, 11379, and 11380, shall

*[footnote continued from previous page]*
the fake tablets on customers. Perhaps that is why the "counterfeit" argument was not made to the jury.

apply." Subdivision (c) includes "(12) Alprazolam." Subdivision (b)(2) provides that the unauthorized possession of a subdivision (c) substance is a misdemeanor, not a "wobbler," as would be a violation of section 11377.

As the information expressly alleged that the forbidden possession was of Xanax, appellant was at all times on notice of the illegal conduct with which she was charged; and she properly makes no due process argument against the conviction (although the People proceed to demolish this nonexistent argument). We will provide the relief appellant requests with respect to this error.

## DISPOSITION

The judgment is affirmed and the trial court is directed to modify its records with respect to count 2 of the information to reflect that appellant was convicted of violating section 11375, a misdemeanor.[4]

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

HOLLENHORST
Acting P. J.

We concur:

RICHLI
J.

MILLER
J.

---

[4] The People indicate that we should order correction of the abstract of judgment, but as appellant was placed on probation no such document was generated. (See Pen. Code, §§ 1213, 1213.5.)