Filed 1/22/16  P. v. Harris CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for
publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for
publication or ordered published for purposes of rule 8.1115.

**IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA**

**FOURTH APPELLATE DISTRICT**

**DIVISION TWO**

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E061874 |
| v. | (Super.Ct.No. RIF1206959) |
| ELBERT HARRIS, JR., | OPINION |
| Defendant and Appellant. | |

APPEAL from the Superior Court of Riverside County.  John M. Davis, Judge.
Affirmed.

Paul J. Katz, under appointment by the Court of Appeal, for Defendant and
Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney
General, Julie L. Garland, Assistant Attorney General, Randall D. Einhorn and Marilyn
L. George, Deputy Attorneys General, for Plaintiff and Respondent.

1

The trial court found defendant and appellant Elbert Harris, Jr., violated the terms of his probation (Pen. Code, § 1203.2, subd. (b))[1] by possessing methamphetamine (Health & Saf. Code, § 11377). The trial court imposed defendant's previously suspended 12-year prison sentence. Defendant raises two issues on appeal. First, defendant contends substantial evidence does not support the finding that he possessed methamphetamine because Riverside County Sheriff's Deputy Dunlap, who performed the field test on the substance at issue, failed to testify that the substance tested positive for methamphetamine. Second, defendant asserts that if this court interprets the record as Dunlap having testified to the field test results, then the trial court erred by failing to conduct a *Kelly*[2] hearing concerning the scientific reliability of the field narcotics test.

We affirm the judgment.

## FACTUAL AND PROCEDURAL HISTORY

A. UNDERLYING OFFENSE

On September 13, 2012, defendant stole a bottle of vodka from a grocery store in Riverside. On June 4, 2013, defendant pled guilty to the offenses of burglary (§ 459), and theft (§ 484, subd. (a)). Defendant also admitted six prison priors (§ 667.5, subd. (b)) and one prior strike conviction (§ 667, subd. (e)(2)(A)). On July 18, 2013, the trial

---

[1] All further statutory references are to the Penal Code unless indicated.

[2] *People v. Kelly* (1976) 17 Cal.3d 24.

2

court imposed a 12-year prison sentence, but suspended execution of the sentence. The court granted defendant 36 months formal probation.[3]

## B. PROBATION VIOLATION

A petition to revoke defendant's probation was filed on June 18, 2014. (Pen. Code, § 1203.2, subd. (b).) The petition charged defendant with (1) willfully inflicting corporal injury on his girlfriend (Pen. Code, § 273.5, subd. (a)), and (2) possessing methamphetamine (Health & Saf. Code, § 11377, subd. (a)). On July 22, the trial court held a combined preliminary hearing and probation violation hearing. The prosecutor elected to proceed only on the methamphetamine charge as the basis for the violation of probation, because the domestic violence evidence was primarily or entirely hearsay.

On June 15, 2014, Riverside County Sheriff's Deputy Shumway responded to a domestic violence call involving defendant and his girlfriend. Defendant had allegedly repeatedly punched his girlfriend's face and torso. Defendant had left the area before Shumway arrived.

On June 16, 2014, Deputy Dunlap followed-up on the domestic violence incident. While en route, Dunlap saw defendant; he arrested defendant. Dunlap searched defendant and found a blue container, like a pill bottle, in defendant's right front pocket. Dunlap asked defendant about the container. Defendant said he did not have information about the container; he found it on the street earlier that day.

---

[3] Probation should not have been granted and the execution of the sentence should not have been suspended due to defendant having a prior serious or violent felony conviction. (§ 1170.12, subd. (a)(2).)

Dunlap opened the container and found a white crystalline substance that he believed was methamphetamine. Dunlap had been involved in at least 50 arrests involving suspected methamphetamine. At the sheriff's station, Dunlap tested the substance with a field test kit. Dunlap had used a field test kit over 50 times.

The prosecutor asked Dunlap, "And what were your conclusions then after testing it?" Defense counsel objected prior to Dunlap answering the question. Defense counsel asserted field test kits (NIK tests) were not sufficiently reliable for a probation violation hearing; counsel asserted the tests could only be used for probable cause hearings. Counsel also cited *Kelly* arguing the prosecutor needed to prove the field test was reliable. The trial court said, "Well, I'm not going to have a full *Kelly* hearing here." The trial court continued, "There will be a continuing objection, but let's allow the People to finish up in this area, then we'll see if there's a proper foundation."

Dunlap never answered the prosecutor's question regarding his conclusions following the test of the crystalline substance. After the trial court responded to defense counsel's objections, the prosecutor asked Dunlap about the type of test kit he used. Later, the following exchange occurred:

"[Prosecutor]: You removed what from the blue container?

"[Dunlap]: The methamphetamine.

"[Prosecutor]: The pouch?

"[Defense Counsel]: Objection.

"The Court: Overruled.

"[Defense Counsel]: Lacks foundation as to calling it methamphetamine.

4

"The Court:  He stated he thought it was suspected methamphetamine, so overruled."

Dunlap testified that he weighed "the substance" and it weighed 2.1 grams. Dunlap did not find any methamphetamine paraphernalia in defendant's possession.  On cross-examination, defense counsel asked, "But you couldn't tell just by looking at it whether it was actually [methamphetamine], or not?"  Dunlap responded, "It looked like every other methamphetamine that I had come across in the past, so that's why I believed it to be methamphetamine, but I had not tested it chemically at that point, no."

Defense counsel asked Dunlap about conducting the field test, and the following exchange occurred:

"[Defense Counsel]:  You said 'performed the test.'  What happened next?

"[Dunlap]:  Then there's a chemical reaction that occurs within the container. And there's a color indication that indicates that a substance either is or is not methamphetamine.

"[Defense Counsel]:  And what are the color indications?

"[Dunlap]:  I believe the blue is a positive test."

Dunlap did not explicitly testify that the test in this case had a blue/positive result.  Defense counsel asked if Dunlap had information about how often a substance tests positive in a field test, but later tests negative in a laboratory test.  Dunlap said he did not have such information, but "[e]very time that it's ever gone to the lab, it has come back positive."  Dunlap could not recall how many of the approximately 50

5

substances he had conducted field tests on, had then been sent to a laboratory for further testing, because not all substances were sent to a laboratory for more tests.

During argument, defense counsel asserted there was not sufficient proof of the substance being methamphetamine. Defense counsel argued a lab test needed to be conducted on the substance.

The trial court said, "It's the court's belief that we have to look at the entire surrounding circumstances when we're looking at a [violation of probation] hearing. We have a person who has a powdery substance in a pill bottle, which is unusual. He's got no reasonable interpretation of why he has that. How he found it is really not believable. If he had said, you know, I'm using this to carry flour because I'm going to go bake a cake or something, and this is some other powder, maybe that might be something. We have his kind of lame reason for having this on him. He doesn't know where it is he found it. Luckiest person in that city to find 2.1 grams of methamphetamine on the ground.

"But anyway, aside from that, we have the officer's observation that in his opinion this was methamphetamine. And all the times that there's been not one test—of course we don't know a number—not one time—and he would have received notification if any of his positives from tests from the NIK test had come back incorrect. So we have his observations.

"We have the strange circumstances. We have the NIK test to back that up. We have a preponderance of the evidence standard, and I do believe that there is sufficient—certainly not beyond a reasonable doubt or any standard higher than

6

preponderance of the evidence, but I do find that the violation of probation has been proven to the Court by a preponderance of the evidence.

"So I'm holding the defendant to answer on Count[s] 1 and 2, as far as the preliminary hearing. And also find that there is sufficient evidence presented to prove the violation of probation as to Count 2 only, nothing as to Count 1."

The prosecutor requested the trial court sentence defendant immediately. The trial court said it was uncomfortable sentencing defendant without more information regarding defendant's criminal history. The court scheduled the sentencing hearing for September 5.

C.     SENTENCING

Probation Officer Ruiz spoke to defendant on August 18. Defendant denied physically attacking his girlfriend, but admitted possessing methamphetamine when detained by Dunlap. Defendant explained he purchased the methamphetamine as a gift for his girlfriend because she "has a serious addiction to methamphetamine." Defendant has also used methamphetamine since 1995.

On September 5, the court held defendant's sentencing hearing. The trial court imposed the 12-year prison sentence, the execution of which had previously been suspended. The trial for the domestic violence and methamphetamine charges was still pending, and scheduled for September 24.

D.    LABORATORY TEST

An October 17, 2014, laboratory test from the Department of Justice Bureau of Forensic Services reflects the substance defendant possessed when arrested by Dunlap, on June 16, was cocaine.[4]

**DISCUSSION**

A.    SUBSTANTIAL EVIDENCE

Defendant contends there is no substantial evidence supporting the finding that the substance he possessed was methamphetamine because Dunlap did not testify about the results of the field test.

Under the substantial evidence standard, we "'"""review the whole record in the light most favorable to the judgment below to determine whether it discloses substantial evidence—that is, evidence which is reasonable, credible, and of solid value . . . .'"" "Substantial evidence includes circumstantial evidence and any reasonable inferences drawn from that evidence.  [Citation.]"  [Citation.]  We "'"""presume in support of the judgment the existence of every fact the trier could reasonably deduce from the

---

**4** Defendant requests this court take judicial notice of the Department of Justice Bureau of Forensic Services's October 17, 2014, report concerning the substance found in defendant's possession.  Defendant contends the report is relevant to the *Kelly* hearing issue on appeal because the report "undermines" Dunlap's testimony by showing the field test is unreliable in that the substance tested negative for methamphetamine in the laboratory test.  We take judicial notice of the report as required by law to the extent the report is an act of the executive branch, i.e., the Department of Justice.  (Evid. Code, §§ 452, subd. (c), 453.)  However, all that we are taking notice of is "the existence of the act, not that what is asserted in the act is true.  [Citation.]  The truth of any factual matters that might be deduced from official records is not the proper subject of judicial notice."  (*Lockley v. Law Office of Cantrell, Green, Pekich, Cruz & McCort* (2001) 91 Cal.App.4th 875, 885.)

evidence.""""" (*People v. Lopez* (2013) 56 Cal.4th 1028, 1069.) Our review is limited to the evidence available to the trial court at the time of the probation violation hearing; we do not make "reference to evidence produced at a later date." (*People v. Welch* (1999) 20 Cal.4th 701, 739.)

The preponderance of the evidence standard of proof applies at probation violation hearings. (*People v. Rodriguez* (1990) 51 Cal.3d 437, 447.) The prosecution bears the burden of proving the substance at issue is a controlled substance. (*People v. Davis* (2013) 57 Cal.4th 353, 362; *In re Waylon M.* (1982) 129 Cal.App.3d 950, 952.) "[T]he nature of a substance, like any other fact in a criminal case, may be proved by circumstantial evidence. [Citations.] It may be proved, for example, by evidence that the substance was a part of a larger quantity which was chemically analyzed [citations], by the expert opinion of the arresting officer [citation], and by the conduct of the defendant indicating consciousness of guilt." (*People v. Sonleitner* (1986) 183 Cal.App.3d 364, 369.)

The substance was a white crystalline substance. Dunlap identified the substance as methamphetamine because it "looked like every other methamphetamine that [he] had come across in the past." Dunlap's identification of the drug lends support to the finding that the substance was methamphetamine because Dunlap was familiar with the substance having seen it multiple times during his career. We note defendant did not object to the admissibility of Dunlap's opinion testimony when Dunlap first expressed

9

his belief that the substance was methamphetamine.[5] (See generally *People v. Viray* (2005) 134 Cal.App.4th 1186, 1209 [failure to object waives the issue for appeal].)

Additionally, the substance was in a blue container, similar to a pill bottle, in defendant's right front pocket. The substance weighed 2.1 grams. The weight of the substance and the container support a finding that the substance was likely a controlled substance because it is difficult to conceive of what crystalline substance, other than a drug, a person would carry only 2.1 grams of in a container similar to a pill bottle. For example, if defendant were carrying laundry detergent, one would expect him to have more than 2.1 grams of the substance.

Next, defendant's explanation to Dunlap that he did not know anything about the container other than he found it on the street earlier in the day also supports the conclusion that the substance was illegal in nature because defendant's story is unreasonable. It is difficult to believe that a person would pick up a container off the street and carry it around in his front pocket with no inquiry into what might be inside the container. Because defendant's story was so unreasonable, it lends further support to the finding that the substance was a controlled substance because it reflects consciousness of guilt.

---

[5] Although we do not rule on this issue, we note that other courts have come to differing conclusions on whether an officer's lay opinion as to whether a substance is a narcotic is admissible when the officer has the requisite experience. (See *U.S. v. Santana* (1st Cir. 2003) 342 F.3d 60, 68-69 [officer's lay opinion that he smelled marijuana is admissible]; but see *Norman v. State of Delaware* (Del. 2009) 968 A.2d 27, 31 & fn. 8 [trial court should be "circumspect" about allowing police officers to offer lay opinions on the identity of narcotics].)

In sum, the evidence reflects defendant was carrying a white crystalline substance, which Dunlap identified as methamphetamine based upon his familiarity with the drug; defendant was carrying 2.1 grams of the substance in a pill bottle like container in his front pocket; and gave an unreasonable explanation regarding the substance. Under the preponderance of the evidence standard, we conclude the foregoing evidence provides substantial support for the trial court's finding that the substance was methamphetamine. Accordingly, we conclude the trial court did not err.

Defendant cites *People v. Adams* (1990) 220 Cal.App.3d 680 (*Adams*) in support of his assertion that the evidence is insufficient. In *Adams*, the defendant was charged with possessing rock cocaine/cocaine base for the purpose of sale. (*Id.* at p. 683.) A criminalist testified that the substance at issue "contained some cocaine," but did not testify that the substance was rock cocaine. The criminalist also testified that she could not identify the substance as rock cocaine by sight alone. (*Id.* at p. 684.) It was unclear whether a chemical analysis had been conducted to determine if the substance was cocaine base. (*Id.* at pp. 684-687.)

On appeal, the defendant asserted there was no substantial evidence proving the cocaine he possessed was cocaine base "as required by the statute under which he was convicted." (*Adams*, *supra*, 220 Cal.App.3d at p. 684.) The appellate court concluded, "the evidence was sufficient to establish defendant possessed some form of cocaine, [but] it was insufficient to establish beyond a reasonable doubt that defendant possessed cocaine base." Thus, the appellate court held there was insufficient evidence to support the defendant's conviction. (*Id.* at pp. 688, 691.)

11

We find defendant's reliance on *Adams* to be unpersuasive because *Adams* involves the beyond a reasonable doubt standard, while the instant case concerns the preponderance of the evidence standard. The difference between the two standards is great. Under the reasonable doubt standard, the trier of fact """"must be reasonably persuaded to a near certainty.""" (*People v. Redmond* (1969) 71 Cal.2d 745, 756.) Whereas the preponderance of the evidence standard asks whether it is "'more likely than not'" that the allegations are true. (*People v. Superior Court* (*Kaulick*) (2013) 215 Cal.App.4th 1279, 1305, fn. 28.) Comparing the instant case to *Adams* is problematic because the two standards of proof are so vastly different.

B.    *KELLY* HEARING

Defendant contends that if this court concludes Dunlap testified about the results of the field test, then the trial court erred by failing to hold a *Kelly* hearing concerning the scientific reliability of the field test. In our reading of the record, Dunlap did not testify about the results of the field test. Accordingly, we will not further discuss the *Kelly* hearing issue because it is moot. (See *People v. Herrera* (2006) 136 Cal.App.4th 1191, 1198 [academic or abstract questions are moot and will not be addressed by this court].)

## DISPOSITION

The judgment is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS


MILLER
J.


We concur:


RAMIREZ
P. J.


KING
J.


13